**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LISA JOHNSON, on behalf of herself and other individuals similarly situated, known and unknown, <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM SERVICES, LLC, <br><br> Defendant. | Case No. 23-cv-685 |

**NOTICE OF REMOVAL**

**PLEASE TAKE NOTICE** that Defendant Amazon.com Services, LLC ("Amazon"), by and through its undersigned counsel, and pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, hereby removes this action from the Circuit Court of Cook County, Illinois, to the United States District Court for the Northern District of Illinois, Eastern Division. Removal is based on the following grounds:

**JURISDICTION AND VENUE**

1. This Court has original jurisdiction over this civil action under 28 U.S.C. § 1332(d)(2). This action is therefore removable pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453(b). This is a class action in which the size of the proposed class exceeds 100 members; there is diversity of citizenship between at least one member of the putative class of plaintiffs and the defendant; and the amount in controversy exceeds $5 million, exclusive of interest and costs.

2. Removal to this Court is proper because the U.S. District Court for the Northern District of Illinois embraces the Circuit Court of Cook County, Illinois, where Plaintiff Lisa Johnson ("Plaintiff Johnson") filed this action. *See* 28 U.S.C. §§ 93(a)(1), 1441(a).

1

**PROCEDURAL HISTORY**

3.      As explained in greater detail below, this lawsuit is essentially a refiling of a class action originally brought in this Court under the name of a different proposed class representative, Gale Miller Anderson ("Plaintiff Anderson"). One week after Plaintiff Anderson voluntarily dismissed that class action, Plaintiff Johnson filed this class action through the same counsel, reviving the same claims against the same Amazon defendant based on the same theory of relief. Indeed, the pleadings here largely copy the pleadings in the predecessor case. *Compare* **Exhibit A** ("Compl.") *with* **Exhibit B** ("Anderson Compl."). However, in a clumsy attempt to avoid federal jurisdiction, the new version of the pleadings omits the earlier admission that the amount-in-controversy for the same claims exceeds $5 million—even though the new pleadings ***enlarge*** the scope of the putative class. *See* Ex. A, Compl. ¶¶ 3, 37; Ex. B, Anderson Compl. ¶¶ 3, 44. With that admission deleted, Plaintiff Johnson filed the new pleadings in state court.

**THE *ANDERSON* ACTION**

4.      On October 31, 2022, Plaintiff Anderson filed a putative class action in the U.S. District Court for the Northern District of Illinois, Eastern Division, against Amazon.com Services, LLC for alleged unpaid wages arising from time spent passing through required "COVID-19 screenings" before starting shifts at an Amazon warehouse. Ex. B, Anderson Compl. ¶¶ 1, 12, 15-17.

5.      On behalf of herself and a putative class, Plaintiff Anderson asserted causes of action under the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq*. (Count I), and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq*. (Count II). *Id.* ¶¶ 2, 52-70.

6.      Plaintiff Anderson defined her putative class as "[a]ll current and former hourly paid employees of Amazon who underwent a COVID-19 screening and worked at least 40 hours during at least one week in Illinois in the three-year period before the filing of the Original Complaint to final

resolution of this Action." *Id.* ¶ 44.[1]

7.    Plaintiff Anderson alleged this Court had jurisdiction over her action under CAFA because the amount put into controversy by the putative class claims "is believed to exceed $5,000,000," "Plaintiff and Defendant are citizens of different states," and "the number of proposed class members in Illinois is believed to exceed 100 individuals." *Id.* ¶ 3.

8.    This Court assigned Plaintiff Anderson's action to the Honorable John J. Tharp, Jr. *See Anderson v. Amazon.com Servs., LLC*, Case No. 1:22-cv-06001 (N.D. Ill.) (Oct. 31, 2022, non-docket entry).

9.    On December 15, 2022, before Amazon filed its responsive pleading, Plaintiff Anderson filed a Notice of Voluntary Dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). *Id.*, Dkts. 12, 13.  Plaintiff Anderson did not explain her decision to voluntarily dismiss her action. *Id.*

### THIS ACTION

10.    One week later, on December 22, 2022, Plaintiff Lisa Johnson filed this putative class action in the Circuit Court of Cook County, Illinois, County Department, Chancery Division.  Ex. A, Compl.  Don J. Foty of Hodges & Foty, LLP represents Plaintiff Johnson, as well as Plaintiff Anderson. *Id.* at 12.

11.    Plaintiff Johnson brings claims against Amazon.com Services, LLC for alleged unpaid wages arising from time spent passing through "COVID-19 screenings" before starting shifts at an Amazon warehouse, just as Plaintiff Anderson did. *Id.* ¶¶ 1, 10, 16-18.  On behalf of herself and a putative class, Plaintiff Johnson likewise asserts causes of action under the IMWL (Count I) and the

---

[1] According to her allegations, Plaintiff Johnson might have been a member of Plaintiff Anderson's putative class. *See* Ex. A, Compl. ¶ 12 (Plaintiff Johnson alleging she was an hourly employee of Amazon in Illinois from January 2019 to May 2021), ¶¶ 20-21 (alleging she underwent COVID-19 screening before her shifts), ¶ 14 (alleging she worked 40 hours more "[i]n one or more individual work weeks during her employment").  Her membership would have depended on whether one of her 40-hour workweeks was one in which she underwent COVID-19 screening.  She does not directly allege this, nor can it be deduced from her allegations.

IWPCA (Count II).  *Id.* ¶¶ 54-69.

12.     Plaintiff Johnson defines her putative class as "[a]ll current and former hourly paid employees of Amazon who underwent a COVID-19 screening during at least one week in Illinois in the three-year period before the filing of this Complaint to final resolution of this Action."  *Id.* ¶ 37.[2] This is a copy of Plaintiff Anderson's class definition except for Plaintiff Anderson's qualifier "and worked at least 40 hours."  *Supra* ¶ 6.  In other words, Plaintiff Johnson's class covers a certain group of Amazon employees who worked any amount of time in a workweek, whereas Plaintiff Anderson's class covered just the subset of that group that worked up to or over the threshold for overtime in a workweek.

13.     Unlike Plaintiff Anderson, Plaintiff Johnson does not make any allegation about the amount put into controversy by the putative class claims.  Instead, Plaintiff Johnson requests an unspecified award of "all unpaid wages, liquidated damages, penalties, interest, and/or restitution" and "reasonable attorneys' fees," among other forms of relief.  *Id.*, Prayer for Relief, ¶¶ 4-6.

14.     On January 6, 2023, Plaintiff Johnson served a copy of her Complaint and Summons on Amazon.  *See* **Exhibit C** (Summons and Affidavit of Service).

15.     On January 31, 2023, Plaintiff Johnson filed a Motion for Leave to File First Amended Class Action Complaint.  *See* **Exhibit D** ("Motion for Leave").  In the Motion, Plaintiff Johnson explained that her proposed Amended Complaint contained only "minor corrections" to her IWPCA claim (Count II).  *Id.* ¶¶ 2-3.  Specifically, the proposed amendments "clarify that she seeks to recover unpaid wages at her agreed upon rate of pay, and not overtime pay."  *Id.* ¶ 2.  Amazon did not oppose the Motion for Leave.

16.     On February 1, the Circuit Court of Cook County granted the Motion for Leave.  *See*

---

[2] According to her allegations, Plaintiff Anderson is a member of Plaintiff Johnson's putative class.  *See* Anderson Compl. ¶ 14 (Plaintiff Anderson alleging she was an hourly employee of Amazon in Illinois from October 2017 to October 2021), ¶ 15 (alleging she underwent COVID-19 screening before her shifts).

**Exhibit E** (Agreed Order).  On February 2, 2023, Plaintiff Johnson filed her First Amended Class Action Complaint.  *See* **Exhibit F** ("Am. Compl.").

17.     Plaintiff Johnson's Amended Complaint is indeed substantially the same as her Complaint, but for the minor corrections to her IWPCA claim.  *Compare* Compl. *with* Am. Compl.[3]

18.     No further proceedings have occurred in the state court action.  *See* **Exhibit G** (Cook County Clerk of the Circuit Court, Electronic Docket Search, Case Information Summary for Case Number 2022-CH-12303 (Feb. 3, 2023)).

## TIMELINESS

19.     The 30-day removal clock under 28 U.S.C. § 1446(b) has not started to run because Amazon has not "receive[d] a pleading or other paper that affirmatively and unambiguously reveals that the predicates for removal are present" for this action.  *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013).  In particular, neither the Complaint, the Amended Complaint, nor any other paper in this action "specifically disclose[s] the amount of monetary damages sought."  *Id.*  Thus, this removal is timely.

20.     Regardless, Amazon filed this Notice within thirty days of service of the Complaint, which occurred on January 6, 2023.  *See* 28 U.S.C. § 1446(b)(1); Fed. R. Civ. P. 6(a)(1)(C).

## GROUNDS FOR REMOVAL: CLASS ACTION FAIRNESS ACT

21.     The Court has original jurisdiction under CAFA because (a) the putative class includes more than 100 members; (b) there is minimal diversity of citizenship; and (c) the amount in controversy exceeds $5 million.  28 U.S.C. § 1332(d); *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d

---

[3] As set forth herein, "the case stated by the initial pleading" is removable.  28 U.S.C. § 1446(b).  Amazon thus cites the allegations in the original Complaint to demonstrate that the grounds for removal under CAFA exist.  Regardless, as the Motion for Leave suggests, all of the material allegations from the original Complaint are repeated in the Amended Complaint, the cites for which are also provided below.  Thus, the case stated by the amended pleading is removable for the same reasons.  In particular, the calculation of the amount-in-controversy for the IWPCA claim stated in the original Complaint set forth below, *infra* ¶¶ 46-55, assumes what the Amended Complaint clarifies: that the IWPCA claim does not seek overtime pay.

568, 578 (7th Cir. 2017). No exception to CAFA jurisdiction applies.

**CLASS SIZE**

22.     CAFA requires that "the number of members of all proposed plaintiff classes in the aggregate" is 100 or greater. 28 U.S.C. § 1332(d)(2), (5)(B).

23.     Plaintiff Johnson seeks to represent one class, which she alleges "includes more than 100 members." Ex. A, Compl. ¶ 43; *see also* Ex. F, Am. Compl. ¶ 44 (same allegation).

24.     More specifically, Plaintiff Johnson's allegations suggest her putative class exceeds 20,000 members. *See* Ex. A, Compl. ¶ 11 (alleging Amazon "employs more than 20,000 workers in Illinois at distribution centers and fulfillment centers throughout the state"); ¶ 16 (alleging "Amazon required its employees to arrive at its fulfillment centers and distribution centers" to undergo COVID-19 screening); ¶ 37 (defining the putative class as "[a]ll current and former hourly paid employees of Amazon who underwent a COVID-19 screening during at least one week in Illinois" over the last three years); *see also* Ex. F, Am. Compl. ¶¶ 12, 17, 38 (same allegations).

25.     For the purposes of removal only, Amazon assumes Plaintiff Johnson's allegations regarding the size of her proposed class are correct. *See Roppo*, 869 F.3d at 581 ("[Defendant] may rely on the estimate of the class number set forth in the complaint.").

26.     Thus, the CAFA class-size requirement is satisfied.

**MINIMAL DIVERSITY OF CITIZENSHIP**

27.     CAFA requires the existence of minimal diversity of citizenship, meaning that "any member of a class of plaintiff is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

28.     Plaintiff Johnson alleges that "she has been domiciled in and is a resident of the State of Illinois at all relevant times." Ex. A, Compl. ¶ 5; *see also* Ex. F, Am. Compl. ¶ 6 (same allegation). Natural persons are citizens "of the state in which they reside or—to be more precise—are

6

'domiciled.'" *Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 634 (7th Cir. 2021). Therefore, Plaintiff Johnson is a citizen of Illinois, according to her allegations.

29.    The sole defendant, Amazon.com Services, LLC, is a limited liability company, as Plaintiff Johnson acknowledges. Ex. A, Compl. ¶ 7; *see also* Ex. F, Am. Compl. ¶ 8 (same allegation). Limited liability companies are citizens "of every state of which any member is a citizen." *Belleville Catering Co. v. Champaign Mkt. Place, LLC*, 350 F.3d 691, 692 (7th Cir. 2003).

30.    Amazon.com Sales, Inc. is the sole member of Amazon.com Services, LLC. *See* **Exhibit H** (Declaration of Allyson Hoffman), ¶ 7. A corporation is "a citizen of every [s]tate . . . by which it has been incorporated and of the [s]tate . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is its "nerve center," or "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). Amazon.com Sales, Inc. was incorporated in Delaware. *See* Ex. H, Hoffman Decl., ¶ 8. Amazon.com Sales, Inc.'s headquarters are located in Seattle, Washington and staffed by the corporate officers and executives responsible for overseeing its business. *Id*. Amazon.com Sales, Inc. is therefore a citizen of Delaware and Washington, which means Amazon.com Services, LLC is also a citizen of Delaware and Washington.

31.    Thus, the CAFA minimal-diversity requirement is satisfied.

## AMOUNT IN CONTROVERSY

32.    CAFA requires that the aggregate amount put in controversy by the action, exclusive of interest and costs, "exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(2), (6).

33.    As the removing party, Amazon bears the burden of establishing that the amount-in-controversy requirement is satisfied. *Roppo*, 869 F.3d at 578. To do so, Amazon need only plead that there is a "reasonable probability that the stakes exceed the minimum." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005). This burden "is a pleading requirement, not a

demand for proof." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d. 761, 763 (7th Cir. 2011) (citation omitted). Thus, "[a] good-faith estimate is acceptable if it is plausible and adequately supported by the evidence." *Id.*; *see also Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84 (2014) (defendant's good-faith estimate of amount in controversy is sufficient for removal).

34.     There are "several ways that the defendant may meet this burden," *Roppo,* 869 F.3d at 579, including by relying on "pleadings from other related lawsuits." *Blomberg*, 639 F.3d at 763.

35.     In *Blomberg*, the Seventh Circuit held that a defendant removing an unpaid-wage lawsuit filed in Illinois state court plausibly demonstrated more than $5 million in controversy by reference to another unpaid-wage lawsuit filed against the same defendant in Virginia federal court. *Id.* at 763-64.  Different plaintiffs brought the two lawsuits, but they made substantively "similar" allegations.  *Id.*  The Virginia plaintiffs alleged the "CAFA jurisdictional amount" was met in their case.  *Id.*  The defendant explained that "the potential recovery" in the Illinois lawsuit was necessarily greater than in the Virginia lawsuit because the proposed Illinois class was larger, among other reasons.  *Id.* at 764.  This provided a "plausible, good-faith estimate[ ] demonstrating how the stakes [in the Illinois lawsuit] exceed[ed] $5,000,000."  *Id.*

36.     Here, Plaintiff Anderson's allegation that the amount-in-controversy for her lawsuit exceeded $5 million, *supra* ¶ 7, plausibly demonstrates the amount-in-controversy this lawsuit exceeds the same threshold.  That is because the potential recovery here is necessarily greater than the potential recovery in Plaintiff Anderson's lawsuit.

37.     As explained above, the substantive allegations of Plaintiff Anderson's lawsuit and this lawsuit are identical.  Both lawsuits seek alleged unpaid wages arising only from time spent passing through required "COVID-19 screenings" before starting shifts at an Amazon warehouse. *Supra* ¶¶ 4, 11.  Both lawsuits name the same Amazon entity as the only defendant.  *Id.* ¶¶ 4, 11, 17. And both lawsuits bring only two claims, under the IMWL and IWPCA.  *Id.* ¶¶ 5, 11, 17.

8

38. Further, the geographic scope of the putative class in both lawsuits is the same: Illinois. *Id.* ¶¶ 6, 12. The temporal scope of the putative classes is the same, too: from the time Amazon allegedly "implemented a company-wide policy requiring" COVID-19 screening "[f]ollowing the outbreak of the Coronavirus" through "final resolution" of the lawsuit. Ex. A, Compl. ¶¶ 10, 37; Ex. B, Anderson Compl. ¶¶ 12, 44; *see also* Ex. F, Am. Compl. ¶¶ 11, 38 (same allegations).[4] The only difference between the putative classes is that Plaintiff Johnson's, in the instant case, covers a broader group of hourly Amazon Illinois employees: all those that underwent COVID-19 screening in a workweek, rather than just those that underwent COVID-19 screening *and* worked at least 40 hours in the same workweek. *Supra* ¶¶ 6, 12.[5] In other words, Plaintiff Anderson's putative class was restricted to overtime-eligible employees, but Plaintiff Johnson's putative class is not. *Id.*

39. Therefore, the pleadings establish that this lawsuit purports to cover every class claim asserted in Plaintiff Anderson's lawsuit, and then some. As such, the potential recovery in this lawsuit is necessarily greater than in Plaintiff Anderson's lawsuit, in which the amount-in-controversy allegedly exceeded $5 million. *Supra* ¶ 7.

40. As in *Blomberg*, it does not matter that the two lawsuits are brought by different plaintiffs. 639 F.3d at 763-64. This is especially true here, where the procedural history, the similarity of the pleadings, and the shared counsel leave no doubt that Plaintiff Johnson is asserting the entirety of the claims Plaintiff Anderson voluntarily dismissed, plus more. *Supra* ¶¶ 3-12.

41. Furthermore, Plaintiff Johnson's counsel signed Plaintiff Anderson's pleadings and presented them to this Court. *See* Ex. B, Anderson Compl. at 16. By doing so, counsel certified that

---

[4] It makes no practical difference that beginning of the putative class period here is technically December 12, 2019, and the beginning of the class period in Plaintiff Anderson's lawsuit was technically October 31, 2019. *Id.* Both periods started before "the outbreak of the Coronavirus" in 2020, at which point Amazon allegedly implemented the COVID-19 screening policy, which is the sole basis for the claims in both actions. *Id.*

[5] The fact that Plaintiff Anderson's allegations establish that she is a member of Plaintiff Johnson's putative class, while Plaintiff Johnson's allegations do not establish that she is a member of Plaintiff Anderson's class, *supra* at n. 1-2, illustrates the greater breadth of Plaintiff Johnson's putative class.

Plaintiff Anderson's factual contentions had "evidentiary support" or were "likely to have evidentiary support after reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). That includes her contention that the amount-in-controversy exceeded $5 million. Ex. B, Anderson Compl., ¶ 3.

42. Between that certification and the filing of this lawsuit, no material proceedings occurred in Plaintiff Anderson's lawsuit: Amazon did not file its responsive pleading, and the parties did not exchange any discovery. *Supra* ¶¶ 4-9. So, there is nothing suggesting that counsel had since learned that Plaintiff Anderson's amount-in-controversy allegation lacked evidentiary support.

43. Notably, Plaintiff Johnson does **not** allege the amount-in-controversy in this lawsuit is somehow $5 million or **less**. *See* Ex. A, Compl.; Ex. F, Am. Compl. Nor could she do so credibly, given her counsel's previous certification and the expanded scope of her putative class.

44. Against this backdrop, Amazon is entitled to rely on the amount-in-controversy allegation in the predecessor lawsuit as establishing the baseline for the amount-in-controversy for this more expansive lawsuit. *See Roppo*, 869 F.3d at 581–82 (acknowledging the "difficulty a defendant faces when the plaintiffs, who control the allegations of the complaint, do not want to be in federal court and provide little information about the value of their claims" and permitting the removing defendant to rely on factual allegations certified by counsel's signature as "well grounded in fact") (citations omitted). After all, the Court and Amazon "should be able to take counsel at his word" under Rule 11. *Id.*

45. The foregoing is sufficient to carry Amazon's burden to plausibly demonstrate that the amount-in-controversy here exceeds $5 million. 28 U.S.C. § 1332(d)(2), (6). Nevertheless, for the avoidance of doubt, Amazon sets forth below a different way of plausibly demonstrating the same thing: "by calculation from the complaint's allegations . . . [and] by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the

10

plaintiff's demands." *Roppo*, 869 F.3d at 579 (citations omitted).

46.     Here, the demands made under Count II, the IWPCA claim, are alone in excess of $5 million.  Ex. A, Compl. ¶¶ 62-69; *see also* Ex. F, Am. Compl. ¶¶ 63-70 (substantially the same allegations).

47.     In her Complaint, Plaintiff Johnson contends that the IWPCA entitles her and her putative class to be paid for "all time they work[ed]."  Ex. A, Compl.  ¶ 40; *id.* ¶ 63 (citing 820 ILCS 115/14); *see also* Ex. F, Am. Compl. ¶¶ 41, 64 (substantially the same allegations).[6]  As such, she claims Amazon is liable under the IWPCA "to [her] and Class Members for all unpaid hourly wages," among other forms of relief.  Ex. A, Compl. ¶ 69; *see also* Ex. F, Am. Compl. ¶ 70 (same allegation).

48.     Plaintiff Johnson also contends that Amazon never paid for any time spent in COVID-19 screening.  Ex. A, Compl. ¶¶ 16-17, 19-22; *see also* Ex. F, Am. Compl. ¶¶ 17-18, 20-23 (same allegations).  She alleges that every hourly Amazon employee who worked in Illinois in one of Amazon's "large warehouse" facilities—*e.g.*, "fulfillment centers and distribution centers"—was required to undergo COVID-19 screening each workday before a shift.  Ex. A, Compl. ¶¶ 10-11, 16, 18, 20, 22-23, 27; *see also* Ex. F, Am. Compl. ¶¶ 11-12, 17, 19, 21, 23-24, 28 (same allegations).[7]  She further alleges that each COVID-19 screening took "approximately 10 minutes to 15 minutes on average," all of which "constitutes compensable time worked."  Ex. A, Compl. ¶¶ 19, 24; *see also* Ex. F, Am. Compl. ¶¶ 20, 25 (same allegations).

49.     Based on these allegations, the aggregate unpaid wages sought under Count II on

---

[6] By contrast, Plaintiff Johnson contends that the IMWL entitles her and her putative class to be paid for all *overtime* hours worked.  *Id.* ¶¶ 41, 54 (citing 820 ILCS 105/4a(1)); Ex. F, Am. Compl. ¶¶ 42, 55 (same allegations); *see also infra* ¶ 56.

[7] These allegations do not make clear whether Plaintiff Johnson contends Amazon required COVID-19 screening each *shift* or *workday*.  She seems to use those terms interchangeably, which does not account for multiple shifts in the same workday.  For purposes of removal, Amazon assumes Plaintiff Johnson contends Amazon required screening once per workday, since that would necessarily yield fewer screenings and, thus, a more conservative estimate of the amount-in-controversy.

behalf of the putative class can be estimated through the following steps. First, find the number of days worked by hourly Amazon employees in Amazon's Illinois warehouse facilities during the period Amazon implemented the alleged COVID-19 screening policy. This figure represents the total number of alleged COVID-19 screenings at issue. Second, multiply the total number of screenings by 10. This product represents the total number of alleged unpaid minutes, assuming each screening took 10 minutes, which is the minimum alleged average. Third, divide the total number of alleged unpaid minutes by 60. This quotient represents the total number of alleged unpaid hours. Fourth, multiply the total number of alleged unpaid hours by the average hourly pay rate for the workdays counted under the first step. This product represents the total amount of unpaid wages sought under Count II.

50.     Across its warehouse facilities in Illinois, Amazon maintained a COVID-19 screening policy at all times from April 1, 2020, through July 31, 2021. Ex. H, Hoffman Decl., ¶¶ 2-3.

51.     During this period, hourly Amazon employees in Amazon's Illinois warehouse facilities worked *at least* 3,445,387 total workdays. *See* **Exhibit I** (Declaration of Dr. Nathan Woods), ¶¶ 3-5.

52.     The average hourly pay rate for those 3,445,387 workdays was $15.91 per hour. *Id.* ¶ 5.

53.     Therefore, the amount of unpaid wages sought under Count II is ***at least*** $9,136,017.86. This is equal to 3,445,387 (workdays), then multiplied by 10 (minutes per screening), then divided by 60 (minutes per hour), then multiplied by 15.91 (average pay per hour). *Supra* ¶ 49.

54.     This is a very conservative estimate of the amount-in-controversy for Count II because it does not account for the additional damages recoverable under the IWPCA, on top of the alleged unpaid wages. *See* 820 ILCS 115/14(a) (2021) (permitting recovery of both "the amount of any such underpayments and damages of 2% of the amount of any such underpayments for each month

following the date of payment during which such underpayments remain unpaid").[8]  It also does not account for all of the relevant workdays: Amazon's records reflect at least 1 million additional workdays attributable to hourly Amazon employees in Amazon's Illinois warehouse facilities during the period from April 1, 2020, through July 31, 2021.  *See* Ex. I, Dr. Woods Decl. ¶¶ 3-5; Ex. H, Hoffman Decl., ¶¶ 2, 4-6.

55.     Thus, Count II alone satisfies the CAFA amount-in-controversy requirement.  Even so, it is worth noting that the demands made under Count I, the IMWL claim, further increase the amount-in-controversy for this lawsuit.

56.     In the Complaint, Plaintiff Johnson contends that the IMWL entitles her and her putative class to "overtime pay" at one and one-half times their regular rates of pay for all time worked over "forty (40) hours in an individual work week."  Ex. A, Compl. ¶¶ 41, 54 (citing 820 ILCS 105/4a(1)); *see also* Ex. F, Am. Compl. ¶¶ 42, 55 (same allegations).  As such, she claims Amazon is liable under the IMWL to her and her putative class for (i) all unpaid overtime hours, trebled, and (ii) additional damages in the amount of 5% per month of the amount of underpayment, among other forms of relief.  Ex. A, Compl. ¶ 61 (citing 820 ILCS 105/12(a)); *see also* Ex. F, Am. Compl. ¶ 62 (same allegations).

57.     The alleged COVID-19 screening policy giving rise to the IMWL claims in Count I is the same as that giving rise to the IWPCA claims in Count II.  *See* Ex. A, Compl. ¶¶ 59, 67; *see also* Ex. F, Am. Compl. ¶¶ 60, 68 (same allegations).

58.     Thus, the additional amount put into controversy by the IMWL claim is equal to (i) treble the amount of any unpaid overtime arising from time spent in COVID-19 screenings that would

---

[8] Plaintiff Johnson appears to contend that all of the additional damages under the IWPCA accrue at a rate of 5% per month, based on the current language of the statute.  *See* Ex. A, Compl. ¶ 69 (citing 820 ILCS 115/14); *see also* Ex. F ¶ 70 (same allegation).  However, the 5% rate did not take effect until July 9, 2021.  Before then, the rate was 2%.  820 ILCS 115/14(a) (2021).

have been over the 40-hour threshold in a class member's workweek, *less* the amount recovered for the same periods of time under the IWPCA claim (*i.e.*, wages paid at the regular, non-overtime rate); plus (ii) additional damages in the amount of 5% per month since the time those overtime wages would have been paid. Amazon does not set forth that additional amount herein; nevertheless, it further reinforces that the CAFA jurisdictional threshold is exceeded given that the IWPCA claim alone puts more than $5 million into controversy. *Supra* ¶¶ 32, 53-55.

59.     It is also worth noting the amount of attorney fees Plaintiff Johnson accrued "up to the time of removal also count toward the jurisdictional amount." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006). That exact amount is unknown to Amazon, nevertheless, it further reinforces that the CAFA jurisdictional threshold is exceeded. *Supra* ¶¶ 32, 53-55.

60.     Thus, the CAFA amount-in-controversy requirement is easily satisfied. 28 U.S.C. § 1332(d)(2).

## NOTIFICATIONS

61.     Amazon will promptly provide written notice to Plaintiff Johnson, through counsel, of the removal, in accordance with 28 U.S.C. § 1446(d).

62.     Amazon will file a copy of its Notice of Removal with the Clerk of the Circuit Court of Cook County, Illinois, County Department, Chancery Division, in accordance with 28 U.S.C. § 1446(d).

## NON-WAIVER AND RESERVATION OF RIGHTS

63.     If this Court determines that the pleadings and other documents to date lack adequate information from which to ascertain the prerequisites to jurisdiction under CAFA, Amazon reserves the right to remove this action at the appropriate time. *See Walker*, 727 F.3d at 821.

64.     Amazon reserves all defenses and objections it may have to this action, without conceding either the Complaint's allegations, the Amended Complaint's allegations, or that Plaintiff

14

Johnson has pleaded claims upon which relief may be granted.

WHEREFORE, Defendant Amazon.com Services, LLC respectfully requests that the above action now pending in the Circuit Court of Cook County, Illinois, be removed to the United States District Court for the Northern District of Illinois, Eastern Division.

Dated:  February 3, 2023                    Respectfully submitted,

                                            */s/ Kevin F. Gaffney*

                                            Sari M. Alamuddin (IL Bar No. 6215689)
                                            Kevin F. Gaffney (IL Bar No. 6318103)
                                            Alexandra Belzley (IL Bar No. 6338712)
                                            MORGAN, LEWIS & BOCKIUS LLP
                                            110 North Wacker Drive
                                            Chicago, IL 60606
                                            (312) 324-1000
                                            (312) 324-1001 fax
                                            sari.alamuddin@morganlewis.com
                                            kevin.gaffney@morganlewis.com
                                            alexandra.belzley@morganlewis.com

                                            *Counsel for Defendant Amazon.com Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of **Defendant's Notice of Removal** was electronically filed with the Clerk of the Court using the Court's CM/ECF electronic filing system and has been served via United States mail, postage prepaid, and email this 3rd day of February, 2023, upon:

Douglas M. Werman
Maureen A. Salas
WERMAN SALAS P.C.
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
Tel: (312) 419-1008
dwerman@flsalaw.com
msalas@flsalaw.com

Don J. Foty
HODGES & FOTY, LLP
2 Greenway Plaza, Suite 250
Houston, Texas 77046
Tel: (713) 523-0001
dfoty@hftrialfirm.com

*Attorneys for Plaintiffs*

*/s/ Kevin F. Gaffney*
Kevin F. Gaffney