**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LISA JOHNSON AND GALE MILLER** | § | |
| **ANDERSON, on Behalf of Themselves** | § | |
| **and on Behalf of All Others Similarly** | § | |
| **Situated,** | § | |
| | § | **Case No.: 1:23-CV-00685** |
| **Plaintiffs,** | § | |
| | § | **Honorable Judge Thomas M. Durkin** |
| **V.** | § | |
| | § | |
| **AMAZON.COM SERVICES, LLC,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendant.** | § | |

**PLAINTIFFS' SECOND AMENDED CLASS AND**
**COLLECTIVE ACTION COMPLAINT**

## I.     INTRODUCTION

1.     This is a class action lawsuit brought by Plaintiffs Lisa Johnson and Gale Miller Anderson ("Plaintiffs"), individually and on behalf of all others similarly situated ("Class Members") to recover unpaid wages, penalties, and attorneys' fees and costs. Defendant Amazon.Com Services, LLC ("Amazon") implemented an illegal policy requiring its non-exempt workers to undergo a COVID-19 screening each shift without pay. This physical and medical examination constitutes compensable time that was worked by the Plaintiffs, Illinois Class Members and FLSA Collective Action Members. By failing to pay for this time worked, Amazon has violated Illinois law. In addition to the Plaintiffs, Amazon has failed to pay for the time spent undergoing COVID-19 screenings by thousands of other workers across the State of Illinois.

2.     Amazon's conduct violates the state laws of Illinois because, for the time Plaintiffs and other employees worked over forty (40) hours a week, Amazon failed to pay overtime wages as required by the Illinois Minimum Wage Law ("IMWL"). *See* 820 ILCS § 105/1 *et seq*.

3.     Amazon's conduct also violates the state laws of Illinois because Amazon failed to pay Illinois employees all their earned wages as required by the Illinois Wage Payment and Collection Act ("IWPCA"). 820 ILCS 115/1 *et seq*.

4.     Members of the Illinois class action are referred to hereinafter as the "Illinois Class Members."

5.     Amazon's conduct also violates the Fair Labor Standards Act ("FLSA"), which requires non-exempt employees to be compensated for all hours worked in excess of forty in a workweek at one and one-half times their regular rate. *See* 29 U.S.C. § 207(a).  On behalf of themselves and all others similarly situated employees, Plaintiffs bring this action as a collective action under the FLSA, 29 U.S.C. § 216(b).  Members of the collective action are referred to hereinafter as the "FLSA Collective Members."

6.     In the alternative to the claims they bring under the IWPCA, Plaintiffs allege Amazon's conduct violated Illinois law and they are owed compensation under the theory of Quantum Meruit.

## II.     JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, the FLSA, 29 U.S.C §§ 201, *et seq*. The Court has supplemental jurisdiction over the state law wage and hour claims under 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative fact.

8.     Venue is proper in this District because a substantial portion of the events forming the basis of this suit occurred in or near Chicago, Illinois. Plaintiffs worked in this District and were denied wages in this District.

9.     Amazon is subject to personal jurisdiction before this Court because it has

purposefully availed itself of the privileges of conducting activities in the State of Illinois and established minimum contacts sufficient to confer jurisdiction. Amazon does business in Illinois, advertises in Illinois, markets to Illinois consumers, and the violations of the law forming the basis of this lawsuit occurred in Illinois. Further, Amazon maintains offices in Illinois and employs Illinois residents. Therefore, the assumption of jurisdiction over Amazon will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

10.    This Court is empowered to issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

### III.    PARTIES AND PERSONAL JURISDICTION

11.    Plaintiff Lisa Johnson is an individual residing in Chicago, Illinois. At all relevant times, Plaintiff Johnson has been domiciled in and is a resident of the State of Illinois. Her consent form to join this action is attached hereto as "Exhibit A."

12.    Plaintiff Gale Miller Anderson is an individual residing in Chicago, Illinois. At all relevant times, Plaintiff Miller Anderson has been domiciled in and is a resident of the State of Illinois. Her consent form to join this action is attached hereto as "Exhibit B."

13.    The "Illinois Class Members" are all current and former hourly paid employees of Amazon who underwent a COVID-19 screening during at least one week in Illinois in the three-year period before the filing of the Original Complaint until final resolution of this Action.

14.    The "FLSA Collective Members" are all current and former hourly paid employees of Amazon who underwent a COVID-19 screening during at least one week in Illinois in the three-year period before the filing of the Original Complaint until final resolution of this Action.

15.    The Illinois Class Members and the FLSA Collective Members shall be collectively

referred to as the "Class Members."

16.     Defendant Amazon.com Services, LLC is a Delaware limited liability company with its principal place of business located in Seattle, Washington.  Defendant has been served and has made an appearance in this case.

17.     At all material times, Amazon was and is legally responsible for the unlawful conduct, policies, practices, acts, and omissions as described and set forth in this Complaint, as the employer of Plaintiffs and the Class Members.

18.     At all material times, Amazon has been governed by and subject to the FLSA, 29 U.S.C. § 207.

19.     At all material times, Amazon has been an employer within the meaning of section 3(d) of the FLSA.  29 U.S.C. § 203(d).

20.     At all material times, Amazon has been an enterprise within the meaning of section 3(r) of the FLSA.  29 U.S.C. § 203(r).

21.     At all material times, Amazon has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA because Amazon has had and continues to have employees engaged in commerce.  29 U.S.C. § 203(s)(1). At all material times, the unlawful conduct against Plaintiffs and the Class Members as described in this Complaint was actuated, in whole or in part, by a purpose to serve Amazon.  At all relevant times, the unlawful conduct described in this Complaint was reasonably foreseeable by Amazon and committed under actual or apparent authority granted by Amazon such that all unlawful conduct is legally attributable to Amazon.

22.     At all material times, Amazon has had an annual gross business volume of not less than $500,000.

23.     At all material times, Amazon was and is legally responsible for the unlawful conduct, policies, practices, acts, and omissions as described and set forth in this Complaint, as the employer of Plaintiffs and Class Members. *See* Illinois Minimum Wage Law, 820 ILCS § 105/3(c); Illinois Wage Payment and Collection Act, 820 ILCS § 115/2.

24.     At all material times, Plaintiffs and Class Members were employees of Amazon within the meaning of the Illinois Minimum Wage Law and the Illinois Wage Payment and Collection Act. 820 ILCS § 105/3; 820 ILCS § 115/2.

## IV.     FACTS

25.     The novel Coronavirus has infected over 100 million Americans and caused the death of over one million Americans. (*See* https://coronavirus.jhu.edu/us-map, last visited February 24, 2023).[1] Following the outbreak of the Coronavirus, Amazon implemented a company-wide policy requiring each of its hourly, non-exempt employees to undergo a physical and medical examination to check for symptoms of the Coronavirus each shift. This examination was imposed by Amazon as a requirement to work each shift. The examination was conducted on the premises of Amazon, was required by Amazon, and was necessary for each employee to perform his/her work for Amazon. Amazon did not pay employees for the time they spent undergoing the examination.  Amazon's conduct violates Illinois law.

26.     Amazon operates fulfillment centers and distribution centers in Illinois and across the country. These Amazon facilities are large warehouses that normally operate 24 hours per day. These Amazon facilities are the warehouses where Amazon stores the packages that are delivered to customers. Upon information and belief, Amazon employs more than 20,000

---

[1]     In Illinois, the Coronavirus has infected nearly four million Illinois residents, and has resulted in approximately 40,000 confirmed deaths. (*See* https://coronavirus.jhu.edu/region/us/illinois, last visited October 25, 2022).

workers in Illinois at distribution centers and fulfillment centers throughout the state.

27.     Plaintiff Johnson worked for Amazon as an hourly, non-exempt employee at the delivery center in Chicago, Illinois. She worked from approximately January 2019 to May 2021. She worked for Amazon as an order picker and packer.  Her job duties included moving boxes, stacking packages, and loading boxes.  Plaintiff Johnson primarily worked a schedule from Monday to Friday between 10:00 p.m. to 6:00 a.m. or 11:00 p.m. to 7:00 a.m.  On occasion, Plaintiff Johnson also worked on Saturdays or Sundays.  In one or more individual workweeks during her employment, Plaintiff Johnson worked 40 or more hours.  When adding the unpaid work described in this Complaint, Plaintiff Johnson regularly worked more than 40 hours each week she went through a COVID-19 screening.

28.     Plaintiff Johnson worked with hundreds of other Amazon workers at the Chicago fulfillment center locations.

29.     Plaintiff Miller Anderson worked for Amazon as an hourly, non-exempt employee in Joliet, Illinois and in Chicago, Illinois. She worked from approximately October 2017 to October 2021.  She worked as a fulfillment center associate. Her job duties included moving boxes, stacking packages, and loading boxes. She worked a schedule that was four days on and three days off.  Each shift was scheduled for 11 hours and was normally 7:00 a.m. to 6:00 p.m. Thus, she normally worked more than 40 hours per week.

30.     Plaintiff Miller Anderson worked with hundreds of other Amazon workers at the Joliet and Chicago fulfillment center locations.

**PLAINTIFFS AND CLASS MEMBERS WERE NOT PAID FOR ALL WORK TIME AS A RESULT OF COMPLETING COVID-19 SCREENINGS "OFF THE CLOCK"**

31.     As an hourly, non-exempt employee, Amazon agreed to pay Plaintiffs an hourly rate of pay for the time they worked at Amazon's facility.

6

32.    Amazon required Plaintiffs to clock-in and clock-out each day.

33.    Following the outbreak of the Coronavirus, Amazon prevented Plaintiffs from clocking in when they first arrived at Amazon's facility.

34.    Instead, prior to allowing Plaintiffs to clock in each day, Amazon required Plaintiffs to undergo a physical and medical examination to screen for symptoms of COVID-19.

35.    Although the COVID-19 screening was required by Amazon, Amazon did not pay any of its employees, including Plaintiffs, for the time spent undergoing the COVID-19 screening.

36.    In addition, there were times that Plaintiff Miller Anderson reported to Amazon's facility prior to her scheduled start time, but Amazon's COVID-19 screening prevented her from clocking in until after her scheduled start time. In instances when Plaintiff Miller Anderson clocked in late due to Amazon's COVID-19 screen, Plaintiff Miller Anderson suffered a loss of the wages Amazon agreed to pay her.

37.    As a direct result of Amazon's COVID-19 screening, Amazon did not pay Plaintiffs and other Class Members for all hours they worked at Amazon's facilities.

38.    Prior to the start of their shifts, Amazon employees were required to form a line at the entrance to the facility and to stand six feet apart.  Amazon employees were then called one-by-one to a checkpoint where the COVID-19 screening took place.  Each employee whose shift was set to begin was required to undergo a temperature check and to answer questions about his/her health. If the employee passed the examination, he/she was then given a mask to wear. After putting on the mask, the employee then walked to the next station where the employee was allowed to clock-in for the day.

39.    The amount of time it takes to wait in line and undergo the COVID-19 examination

was approximately 10 minutes to 15 minutes on average. This amount of time could be longer depending upon the number of other Amazon employees in line for the COVID-19 screening. The COVID-19 screening occurred each day at each Amazon facility in Illinois and no Amazon employee could work without first passing the COVID-19 screening.

40.     Plaintiffs know and are aware that other Amazon facilities in Illinois have COVID-19 screening procedures because there were multiple notices posted around the facility indicating that COVID-19 screening and prevention practices were being instituted across Amazon at a corporate-wide level.

41.     This COVID-19 screening should have been paid by Amazon because it constitutes compensable time worked. During this time, Plaintiffs and Class Members were subject to Amazon's control.

42.     Plaintiffs and the Class Members were required to follow Amazon's instructions while awaiting and during the COVID-19 screening. Amazon required every employee to complete the COVID-19 screening and it was not optional. Indeed, the COVID-19 screening was required by Amazon and its employees were required to comply under threat of discipline, including possible termination.

43.     Additionally, Plaintiffs and the Class Members were confined to the premises of Amazon when they waited for the examination and during the examination.

44.     Moreover, Amazon compelled its employees to perform specific tasks during the examinations. They were required to answer questions, submit to have their temperature taken, and wear masks.

45.     In other words, Amazon directed, commanded, and restrained its employees during the COVID-19 examinations; prevented them from using that time effectively for their own

8

purposes; and Plaintiffs and the Class Members remained subject to Amazon's control during the examinations.

46.     The COVID-19 screenings were also necessary to the principal work performed by Plaintiffs and the Class Members and were necessary to ensure a safe workplace. The COVID-19 examinations were also undertaken on Amazon's premises, were controlled and required by Amazon, and undertaken primarily for the benefit of Amazon.

47.     Indeed, Amazon required Plaintiffs and the Class Members to undergo this screening for the purposes of overall safety in the Amazon facilities and to prevent Plaintiffs and the Class Members from inadvertently and unintentionally infecting the Amazon facilities or Amazon products, and in turn, Amazon's customers. Likewise, the job duty of Plaintiffs and the Class Members was to serve the customers of Amazon and the screening was necessary to ensure that Plaintiffs and the Class Members safely provide that service to Amazon's customers.

48.     The COVID-19 examinations were necessary to ensure that the virus did not infect the Amazon facilities or customers. The examinations were also necessary to ensure that the virus did not disrupt the work performed by Plaintiffs and the Class Members or affect the business operations of Amazon. If Amazon did not have the COVID-19 screening, workers could inadvertently or unintentionally bring the virus into the Amazon facilities causing a mass breakout of the virus infecting hundreds to thousands of other workers of Amazon. Plaintiffs and the Class Members could not perform their work for Amazon if there was a mass breakout of the virus at the Amazon facilities. Furthermore, the COVID-19 virus directly affects the health of workers. If Plaintiffs and the Class Members became infected with the virus, their health would suffer. Symptoms of the virus include fatigue, lack of strength, coughing, headaches, and other symptoms. Plaintiffs and the Class Members could not perform their work for Amazon if they

were infected with the virus.

49.     Moreover, the COVID-19 screenings were integral and indispensable to the principal activity and primary job duty performed by Plaintiffs and the Class Members, which was to serve and assist Amazon customers receiving their purchased items. The COVID-19 screenings were necessary for Plaintiffs and Class Members to perform their primary job duty for Amazon. If Amazon cancelled the COVID-19 screenings, the Amazon facilities could get contaminated with the virus, the items that Amazon sold could get contaminated with the virus, the customers could get infected, and other employees of Amazon could get infected. In that event, Amazon's business would be disrupted, and Plaintiffs and Class Members would not be able to do their work. Therefore, the COVID-19 screenings were necessary to ensure that Plaintiffs and Class Members could do their jobs for Amazon.

50.     The COVID-19 screenings were also integral and indispensable to the principal activity and primary job duty performed by Plaintiffs and the Class Members because the COVID-19 screenings were necessary to ensure that Amazon workers could perform their work safely, to prevent contamination from the virus, and to keep the customers of Amazon safe.  If employees became infected with the virus, they would not be able to provide their services to Amazon.  Moreover, if Amazon customers received packages that were infected with the virus, the customers would likely no longer use Amazon's services.

51.     Thus, the COVID-19 screenings were necessary for the Plaintiffs and Class Members to do their work for Amazon and without the screenings, their ability to do their jobs would have been compromised.  Plaintiffs and the Class Members could not skip the screenings altogether without the safety or effectiveness of their principal activities being substantially impaired.  The screenings prevented the COVID-19 virus from spreading through Amazon's

facilities and infecting employees and products, thereby allowing Amazon employees to continue to work.

52.     Under these facts, the COVID-19 screenings were also for the benefit of Amazon and its customers. The COVID-19 screenings allowed Amazon's operations to continue and therefore, allowed Amazon to earn a profit. Similarly, the COVID-19 screenings benefited Amazon's customers by allowing them to receive products in a timely basis and to receive products that were not contaminated. Indeed, the COVID-19 screenings were conducted by Amazon with the intent for Amazon to benefit, to earn more profits, and to continue its business. In fact, Amazon's business substantially grew during the pandemic and it appears that the pandemic provided a windfall for Amazon's operations.

53.     The COVID-19 screenings were also primarily for the benefit of Amazon because Amazon's COVID-19 screening policy was intended to keep its fulfillment centers and distribution centers as safe of a workplace as possible given the circumstances of the global pandemic. Amazon's COVID-19 screening policy was also intended to ensure the safety of Amazon's workers and to ensure that Amazon complied with the law.   By making the workplace safe, Amazon increased the efficiency of Amazon's operations and allowed it to make billions in profits during the pandemic.  Indeed, having business operations continue without interruption undoubtedly increased the profits of Amazon.  Similarly, complying with all laws ensured Amazon could continue to operate and earn profits.  Moreover, having employees who are healthy and able to perform their work ensures that Amazon can continue to operate and earn profits.

54.     The COVID-19 screenings were to ensure that the virus did not disrupt the work performed by the Plaintiffs/Class Members or affect the business operations of Amazon.  If

Amazon facilities suffered an infection outbreak, Amazon would potentially have to find new employees or shut down its warehouses until it was safe to open again. Such an outbreak would harm Amazon directly and cause it to lose significant profits. Given this substantial risk to Amazon's business operations, Amazon primarily benefitted from the COVID-19 screenings.

55.     Under Illinois law, "hours worked" includes "all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer." 56 Ill. Admin. Code § 210.110.

56.     Amazon's requirement for its employees to complete a COVID-19 screening prior to clocking in each shift constitutes "hours worked" under Illinois law. *See Boone v. Amazon*, 562 F.Supp.3d 1103 (E.D. Cal. 2022) (holding that time spent completing COVID-19 screenings is compensable under similar California state law).

57.     Similarly, the time spent completing the COVID-19 screenings is compensable under the FLSA.

58.     The Department of Labor has issued regulations stating that physical and health examinations, like the COVID-19 examination, constitutes time that should be paid for by employers. *See* 29 CFR § 785.43.

> In an opinion letter, the Department of Labor has further stated as follows: Time spent undergoing a physical examination is time during which the employee's freedom of movement is restricted for the purpose of serving the employer and time during which the employee is subject to the employer's discretion and control. It is immaterial whether the time spent in undergoing the required physical examination is during the employee's normal working hours or during nonworking hours. The physical examination is an essential requirement of the job and thus primarily for the benefit of the employer. **Therefore, it is our opinion that the time so spent must be counted as hours worked under the FLSA.**

DOL Wage and Hour Opinion Letter, January 26, 1998 (emphasis added).

59.     In light of Amazon's conduct, Plaintiffs and Class Members are owed significant unpaid wages and penalties.

60.     Plaintiffs and Class Members are and were non-exempt employees.

61.     Plaintiffs and Class Members are paid on an hourly rate basis.

62.     When they work more than forty (40) hours in a workweek, they are entitled to overtime pay.

63.     The COVID-19 screenings identified above were not incidental activities for the Plaintiffs and Class Members, but instead, this time was integral and indispensable to their principal activity, was controlled by Amazon, was required by Amazon, was conducted on Amazon's premises, and was performed primarily for the benefit of Amazon and its customers. Therefore, the time spent by the Plaintiffs and Class Members completing the COVID-19 screenings is compensable.

64.     Although Amazon employs electronic "clocking-in" technology, this technology was not made accessible to Plaintiffs and Class Members before the COVID-19 screenings.

65.     As a result of Amazon's company-wide policies, Plaintiffs and Class Members were not paid for all time worked each day and are owed significant unpaid wages.

66.     Amazon's method of paying Plaintiffs and Class Members in violation of Illinois law and federal law was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. Amazon knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

### V.      RULE 23 CLASS ACTION ALLEGATIONS

67.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules

of Civil Procedure on behalf of the Illinois Class, which is comprised of:

**Illinois Minimum Wage Law Class**

> **All current and former hourly paid employees of Amazon who underwent a COVID-19 screening and worked at least 40 hours during at least one week in Illinois in the three-year period before the filing of the Original Complaint to final resolution of this Action.**

**Illinois Wage Payment and Collection Act Class**

> **All current and former hourly paid employees of Amazon who underwent a COVID-19 screening in Illinois.**

68.     In the alternative to the claim filed under the Illinois Wage Payment and Collection Act, Plaintiffs bring a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Quantum Meruit Class, which is comprised of:

**Quantum Meruit Class**

> **All current and former hourly paid employees of Amazon who underwent a COVID-19 screening in Illinois.**

69.     <u>Numerosity</u>:  The number of members in the Illinois Class is believed to exceed forty (40) and in fact, is likely to be in the thousands. This volume makes bringing the claims of each individual member of the Illinois Class before this Court impracticable. Likewise, joining each individual member of the Illinois Class as a plaintiff in this action is impracticable. Furthermore, the identity of the members of the Illinois Class will be determined from Amazon's records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Illinois Class Members and Amazon.

70.     <u>Typicality</u>:  Plaintiffs' claims are typical of the Illinois Class Members' claims because like the members of the Illinois Class, Plaintiffs were subject to Amazon's uniform

policies and practices and were compensated in the same manner as others in the Illinois Class. Amazon failed to pay the Illinois Class Members for all overtime hours they worked. Additionally, members of the Illinois Class worked substantially more than forty (40) hours in a week as non-exempt employees. Accordingly, Plaintiffs and the Illinois Class Members have been uncompensated and/or under-compensated as a result of Amazon's common policies and practices which failed to comply with Illinois law. As such, Plaintiffs' claims are typical of the claims of the Illinois Class Members. Plaintiffs and all members of the Illinois Class sustained damages arising out of and caused by Amazon's common course of conduct in violation of law as alleged herein.

71.     <u>Adequacy</u>:  Plaintiffs are representative parties who will fairly and adequately protect the interests of the Illinois Class Members because it is in their interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Illinois law. Plaintiffs have retained attorneys who are competent in both class actions and wage-and-hour litigation. Plaintiffs do not have any interest which may be contrary to or in conflict with the claims of the Illinois Class Members they seek to represent.

72.     <u>Commonality</u>:  Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact and law include, but are not limited to:

      a.  Whether Plaintiffs and the Illinois Class Members are entitled to compensation for the time spent in the COVID-19 screenings;

      b.  The amount of time spent in the COVID-19 screenings;

      c.  Whether Plaintiffs and the Illinois Class Members worked more than forty (40) hours in a workweek;

      d.  Whether Amazon failed to pay Plaintiffs and the Illinois Class Members wages

for all overtime hours worked; and

    e.   The proper measure of damages sustained by Plaintiffs and the Illinois Class Members.

73.    <u>Superiority</u>:  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the Illinois Class could afford to pursue individual litigation against a company the size of Amazon, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Illinois Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Amazon.

74.    A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Illinois Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the Illinois Class Members by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication. The identity of the members of the Illinois Class is readily identifiable from Amazon's records.

75.    This type of case is well-suited for class action treatment because: (1) Amazon's practices, policies, and/or procedures were uniform; (2) the burden is on Amazon to prove it properly compensated its employees including any potential exemptions that might apply; and (3) the burden is on Amazon to accurately record hours worked by employees. Ultimately, a class

16

action is a superior form to resolve the Illinois claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Amazon to pay Plaintiffs and the Class per applicable Illinois laws.

## VI.  COLLECTIVE ACTION ALLEGATIONS

76.     Plaintiffs have actual knowledge that the FLSA Collective Members have also been denied pay for hours worked over forty (40) per workweek.  Plaintiffs worked with and communicated with other hourly, non-exempt employees and as such, have personal knowledge of their existence, status as Amazon's employees, pay structure, and the overtime violations.

77.     Amazon has employed numerous other employees throughout Illinois during the last three years, who were paid on an hourly basis, were classified as not exempt from overtime, and who underwent the COVID-19 medical screening without pay.

78.     As such, the "FLSA Collective" is properly defined as follows:

> **All current and former hourly paid employees of Amazon who underwent a COVID-19 screening and worked at least 40 hours during at least one week in the three-year period before the filing of this Complaint to the present.**

79.     Although Amazon permitted and/or required the FLSA Collective Members  to work in excess of forty (40) hours per workweek, Amazon has denied them compensation for their hours worked over forty (40).

80.     Plaintiffs are representatives of the FLSA Collective in that they were classified as non-exempt from overtime, were paid on an hourly basis and underwent the COVID-19 screening without pay.  Plaintiffs are acting on behalf of the FLSA Collective's interests as well as Plaintiffs' own interests in bringing this action.

81.     The FLSA Collective Members  were classified as non-exempt.

82.     The FLSA Collective Members  were paid on an hourly basis.

83.     The FLSA Collective Members underwent the COVID-19 screenings.

84.     The FLSA Collective Members regularly work or have worked in excess of forty (40) hours during a workweek.

85.     The FLSA Collective Members were not paid for the time spent in the COVID-19 screenings.

86.     The policy of failing to pay for the time spent in the COVID-19 screenings is universal across the defined FLSA Collective and forms the basis of the overtime violation.

87.     The FLSA Collective Members are not exempt from receiving overtime pay under the FLSA.

88.     As such, the FLSA Collective Members are similar to the Plaintiffs in terms of pay structure and/or the denial of overtime compensation.

89.     Amazon's failure to pay overtime compensation at the rate required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the FLSA Collective Members.

90.     The experiences of the Plaintiffs with respect to their pay and process for completing the COVID-19 screenings is typical of the experiences of the FLSA Collective Members.

91.     The specific job titles or precise job responsibilities of each FLSA Collective Member does not prevent collective treatment.

92.     All FLSA Collective Members, irrespective of their particular job requirements, are entitled to overtime compensation at the rate of time and a half for hours worked in excess of forty (40) during a workweek.

93.     Although the exact amount of damages may vary among FLSA Collective Members, the damages can be easily calculated by a simple formula.  The claims of all FLSA Collective Members arise from a common nucleus of facts.   Liability is based on a systematic course of wrongful conduct by Amazon that caused harm to all FLSA Collective Members.

94.     The similarly situated FLSA Collective Members are known to Amazon, are readily identifiable, and can be located through Amazon's records.  They should be notified and allowed to opt into this action pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages and/or prejudgment interest, and attorneys' fees and costs.

95.     Unless the Court promptly issues such notice, the numerous similarly situated workers nationwide will be unable to secure unpaid overtime pay, which has been unlawfully withheld by Amazon.

## VII.   CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**Failure to Pay Overtime as Required by the Illinois Minimum Wage Law**

96.     All previous paragraphs are incorporated as though fully set forth herein.

97.     The Illinois Minimum Wage Law ("IMWL") entitles covered employees to overtime compensation of not less than one and one-half ($1^1/_2$) times the employee's regular rate of pay for all hours worked in excess of forty (40) in one workweek. *See* 820 Ill. Comp. Stat § 105/4a(1).

98.     Amazon is subject to the IMWL's overtime requirements because Amazon is an employer under 820 Ill. Comp. Stat § 105/3(c).

99.     During all relevant times, Plaintiffs and the Illinois Class Members were covered employees entitled to the above-described IMWL protections. *See* 820 Ill. Comp. Stat. § 105/3(d).

100.    Plaintiffs and the Illinois Class Members are not exempt from the IMWL.

101.    Plaintiffs and the Illinois Class Members routinely worked in excess of 40 hours per workweek.

102.    As described in the foregoing paragraphs, Amazon's compensation policies and practices are in violation of the IMWL. *See* 820 ILCS § 115/1 *et seq.*

103.    Amazon knowingly failed to compensate Plaintiffs and the Illinois Class Members for all hours worked and hours worked in excess of forty (40) hours in a workweek, in violation of the IMWL. *See* 820 Ill. Comp. Stat. § 105/4a(1).

104.    Pursuant to 820 Ill. Comp. Stat. § 105/12(a), employers such as Amazon who fail to pay an employee wages in conformance with the IMWL, shall be liable to the employee for, inter alia, unpaid wages for three years prior to the filing of the lawsuit, statutory penalties in the amount of five percent (5%) per month of the amount of underpayment, and reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### Violation of the Illinois Wage Payment and Collection Act

105.    All previous paragraphs are incorporated as though fully set forth herein.

106.    This count arises under the Illinois Wage Payment and Collection Act for Amazon's failure and refusal to pay Plaintiffs and Illinois Class Members for all the wages they earned.

20

107. The Illinois Wage Payment and Collection Act ("IWPCA") requires employers to pay employees all wages earned within 13 days after the end of a semi-monthly or bi-weekly pay period or within seven days after a weekly pay period in full at the lawful rate. *See* 820 Ill. Comp. Stat. § 115/4.

108. If an employer fails to pay an employee all wages earned by the statutory deadline, the employee may commence a civil action to recover the amount of any underpayment and damages in the amount of five percent (5%) of each underpayment compounded monthly, plus costs and reasonable attorneys' fees. *See* 820 Ill. Comp. Stat. § 115/14.

109. Pursuant to 735 Ill. Comp. Stat. § 5/13-206, the statute of limitations applicable to the IWPCA is ten years after accrual of the cause of action.

110. Amazon agreed to pay Plaintiffs an hourly rate of pay for the time they spent performing the duties and/or tasks Amazon directed them to perform.

111. Amazon agreed to pay Illinois Class Members an hourly rate of pay for the time they spent performing the duties and/or tasks Amazon directed them to perform.

112. During the course of their employment with Amazon, and as a result of Amazon's COVID-19 screen, Amazon did not compensate Plaintiffs for all time they spent performing the duties and/or tasks Amazon directed them to perform.

113. Amazon also failed to pay other Illinois Class Members for all time they spent performing the duties and/or tasks Amazon directed them to perform.

114. Amazon's actions, policies and/or practices as described above violate the IWPCA by failing to compensate Plaintiffs and the Illinois Class Members for all wages they earned.

115. As a direct and proximate result of this practice, Plaintiffs and the Illinois Class Members have suffered loss of income and other damages to be determined at trial.

116. As such, Plaintiffs and the Illinois Class Members are entitled to the underpayment, damages in the amount of five percent (5%) per month of the amount of the underpayment, and reasonable attorneys' fees and costs. *See* 820 Ill. Comp. Stat. § 115/14.

### THIRD CLAIM FOR RELIEF

### Violation of the Fair Labor Standards Act

117. Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

118. The FLSA requires each covered employer, such as Amazon, to compensate all non-exempt employees at a rate of not less than one-and-a-half times their regular rate of pay for work performed in excess of forty (40) hours in a workweek.

119. Plaintiffs and the FLSA Collective Members were entitled to be paid overtime compensation for all overtime hours worked at the rate of one and one-half times their regular rate of pay.

120. At all relevant times, Amazon required and/or permitted Plaintiffs and the FLSA Collective Members to work in excess of forty (40) hours per workweek. Despite the hours worked by them, Amazon willfully, in bad faith, and knowingly violated the FLSA, failed and refused to pay Plaintiffs and the FLSA Collective Members the appropriate overtime wages for all compensable time worked in excess of forty (40) hours per workweek.

121. Plaintiffs and the FLSA Collective Members were not paid the full amount of overtime wages due under the FLSA as a result of Amazon's failure and refusal to classify the time spent in the COVID-19 screening as compensable time.

122. By failing to compensate Plaintiffs and the FLSA Collective Members at a rate of not less than one-and-a-half times the regular rate of pay for work performed in excess of forty

(40) hours in a workweek, Amazon has violated the FLSA, 29 U.S.C. § 201 *et seq.*, including 29 U.S.C. § 207(a).

123.   Plaintiffs and the FLSA Collective Members seek recovery of their damages, unpaid overtime pay, liquidated damages, attorneys' fees, costs and expenses.

124.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

## **FOURTH CLAIM FOR RELIEF**

### **Quantum Meruit (Pleaded in the Alternative to the IWPCA Count)**

125.   Amazon implemented a company-wide policy requiring each of its hourly, non-exempt employees to undergo a physical and medical examination to check for symptoms of the Coronavirus each shift. This examination was imposed by Amazon as a requirement to work each shift. The examination was conducted on the premises of Amazon, was required by Amazon, and was necessary for each employee to perform his/her work for Amazon.

126.   Amazon did not pay employees for the time they spent undergoing the COVID-19 screenings.

127.   Plaintiffs and other current and former hourly paid employees of Amazon who underwent a COVID-19 screening in Illinois (the Quantum Meruit Class) provided and furnished Amazon their valuable time and services by submitting to required COVID-19 screenings.

128.   Amazon benefitted from the time Plaintiffs and the Quantum Meruit Class spent in COVID-19 screenings.

129.   It would be unjust for the Amazon to retain the benefit of Plaintiffs' time and the time of the Quantum Meruit Class spent in Amazon's required COVID-19 screenings without paying for such time.

130.    Plaintiffs and the Quantum Meruit Class, by providing unpaid labor, conveyed a benefit to Amazon which Amazon knowingly received.

131.    Instead of incurring significant business, operating, and labor costs by paying for these services, Amazon knowingly shifted that responsibility, risk, and considerable cost to Plaintiffs and the Quantum Meruit Class. As a result, Amazon was unjustly enriched because those shifted costs were borne and absorbed by Plaintiffs and the Quantum Meruit Class.

132.    Amazon is not entitled to this benefit without payment to Plaintiffs and the Quantum Meruit Class, and retention of such benefits, without payment, would be unjust to Plaintiffs and the Quantum Meruit Class.

133.    By the course of conduct set forth above, Amazon is liable to Plaintiffs and the Quantum Meruit Class under Quantum Meruit.

134.    Due to Amazon's actions, Plaintiffs and the Quantum Meruit Class are entitled to recover all of their unpaid regular (but not overtime) compensation, and such other legal and equitable relief stemming from Amazon's conduct.

## VIII. **JURY DEMAND**

135.    Plaintiffs hereby demand a trial by jury on all issues.

## IX.    **PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of all Class Members, pray that the Court:

1.    Certify that this action may proceed as a class action under Fed. R. Civ. P. 23;

2.    Certify that this action may proceed as a collective action under 29 U.S.C. § 216(b);

3.    Appoint Plaintiffs as Representatives of the Illinois Class and FLSA Collective, and appoint their counsel as Class Counsel;

4.    Find and declare that Amazon's policies and/or practices described above violate

Illinois law;

5.    Award all unpaid wages, unpaid overtime, liquidated damages, penalties, interest, and/or restitution to be paid by Amazon for the causes of action alleged herein;

6.    Award costs, and expenses, including reasonable attorneys' fees and expert fees;

7.    Award pre-judgment and post-judgment interest, as provided by law; and

8.    Order such other and further legal and equitable relief the Court deems just, necessary and proper.

Date: February 28, 2023                    Respectfully submitted,

                        s/Don J. Foty
                        Don J. Foty- dfoty@hftrialfirm.com
                        HODGES & FOTY, LLP
                        Bar No. 24050022
                        2 Greenway Plaza, Suite 250
                        Houston, Texas 77046
                        Tel: (713) 523-0001

            AND

                        Douglas M. Werman- dwerman@flsalaw.com
                        Maureen A. Salas – msalas@flsalaw.com
                        WERMAN SALAS P.C.
                        77 W. Washington, Suite 1402
                        Chicago, Illinois 60602
                        Tel: (312) 419-1008