**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LISA JOHNSON AND GALE MILLER** | § | |
| **ANDERSON, on Behalf of Themselves** | § | |
| **and on Behalf of All Others Similarly** | § | |
| **Situated,** | § | |
| | § | **Case No.: 1:23-CV-00685** |
| *Plaintiffs,* | § | |
| | § | **Honorable Judge Thomas M. Durkin** |
| **V.** | § | |
| | § | |
| **AMAZON.COM SERVICES, LLC,** | § | |
| | § | |
| *Defendant.* | § | |

<u>**PLAINTIFFS' RESPONSE TO AMAZON'S MOTION TO DISMISS**</u>

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................... 1

II.    ARGUMENT ............................................................................................................. 2

    A.    Applicable Legal Standard....................................................................... 2

    B.    Plaintiffs' FLSA Claims Plausibly State a Claim .................................... 2

        1.    Plaintiffs have pled sufficient facts that the time spent in the
COVID-19 screenings is "integral and indispensable" to their
principal work activities.................................................................. 2

        2.    The U.S. Department of Labor has issued authority providing that
the time spent in health examinations, like the COVID-19
screenings, is compensable under the FLSA ................................... 9

        3.    Amazon's Motion to Dismiss should be denied because the facts
pled by the Plaintiffs establish that Amazon primarily benefited
from the COVID-19 screenings. .................................................... 12

        4.    To date, *every* federal court to have considered Amazon's
Arguments Have Allowed the Claims to Advance Past the
Pleading Stage .............................................................................. 14

    C.    Plaintiffs Plausibly Allege a Claim Under the IMWL........................... 16

        1.    Under the IMWL, Hours Worked Includes All Time the Employee
is Required to Be on the Employer's Premises............................... 17

        2.    The IMWL Does Not Incorporate Portal-to-Portal Act Provisions .......... 19

            i.    The Portal-to-Portal Act............................................. 19

            ii.    Controlling Circuit Authority Holds Hours Worked Under
the IMWL Differ from Hours Worked Under the FLSA.............. 20

            iii.    The IMWL Makes No Mention to the Portal-to-Portal Act
or its Provisions.......................................................... 21

            iv.    The IMWL's Adoption of Other FLSA Exclusions By
Specific Reference Emphasizes the Significance of the
Omitted Portal Act Provisions .................................... 22

        3.    Amazon Does Not Provide Direct Support that the IMWL
Incorporates the Portal-to-Portal Act Provisions ..................................... 23

    D.    Plaintiffs Plausibly State a Claim Under the IWPCA........................... 24

    E.    Plaintiffs Have Plausibly Alleged a Quantum Meruit Claim................. 26

III.   CONCLUSION........................................................................................................ 28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aguilar v. Mgmt & Training Corp.*

948 F.3d 1270 (10th Cir. 2020) ......................................................................... 7, 8, 16

*Amaya v. DGS Constructions, LLC*

278 A.3d 1216 (Md. 2022) ......................................................................... 22

*Anderson v. Mt. Clemens Pottery Co.*

328 U.S. 680 (1946)......................................................................... 19, 20

*Bartlett v. City of Chicago*

2019 WL 4823532 (N.D. Ill. Oct. 1, 2019)......................................................................... 24

*Bell Atl. Corp. v. Twombly*

550 U.S. 544 (2007)......................................................................... 2

*Bogie v. Rosenberg*

705 F.3d 603 (7th Cir. 2013) ......................................................................... 17

*Boone v. Amazon.com Services, LLC*

562 F. Supp. 3d 1103 (E.D. Cal. 2022)......................................................................... 1, 13, 14, 16

*Brown v. Club Assist Rd. Serv. U.S., Inc.*

No. 12 CV 5710, 2013 WL 5304100 (N.D. Ill. Sept. 19, 2013)......................................................................... 24

*Cates v. All. Coal, LLC*

No. 21-CV-377-SMY, 2022 WL 4782857 (S.D. Ill. Oct. 3, 2022) ......................................................................... 25

*Chagoya v. City of Chicago*

992 F.3d 607 (7th Cir. 2021) ......................................................................... 7, 24

*Cleary v. Philip Morris Inc.*

656 F.3d 511 (7th Cir. 2011) ......................................................................... 28

*Coon v. Doss*

361 Ill. 515 (Ill. 1935)......................................................................... 22

*Driver v. AppleIllinois, LLC*

917 F. Supp. 2d 793 (N.D. Ill. 2013) ......................................................................... 17

*Estate of Charles W. Kent v. Vollmer*

    4 Ill.2d 81 (Ill. 1954) ................................................................................................. 22

*Frlekin v. Apple Inc.*

    457 P.3d 526 (Cal. 2020) ........................................................................................... 22

*Gallardo v. Scott Byron & Co.*

    No. 12-CV-7202, 2014 WL 126085 (N.D. Ill. Jan. 14, 2014) .................................. 24

*Guzman v. Laredo Sys., Inc.*

    2012 WL 5197792 (N.D. Ill. Oct. 19, 2012) ............................................................ 23

*Haro v. Walmart, Inc.*

    2023 WL 22393333 (E.D. Cal. Feb. 27, 2023) ........................................................ 15

*Harwell-Payne v. Cudahy Place Senior Living LLC*

    No. Civ. A. 21-CV-328-PP, 2022 WL 6195619 (E.D. Wisc. Sept. 30, 2022) ......... 15

*Holman v. Indiana*

    211 F.3d 399 (7th Cir. 2000) ................................................................................... 28

*Howard v. City of Springfield*

    274 F.3d 1141 (7th Cir. 2001) ................................................................................... 2

*IBP, Inc. v. Alvarez*

    546 U.S. 21 (2005) .................................................................................................... 16

*In Borne v. AAY Sec. LLC*

    No. Civ. A. 1:17-CV-510, 2019 WL 5394010 (E.D. Tex. Oct. 21, 2019) .............. 10

*In re:Amazon.com, Inc.*

    255 A.3d 191 (Pa. 2021) ........................................................................................... 22

*Integrity Staffing Solutions, Inc. v. Busk*

    574 U.S. 27 (2014) ........................................................................................... 6, 7, 12

*Jameson Real Est., LLC v. Ahmed*

    2018 IL App (1st) 171534, 129 N.E.3d 128 ............................................................ 28

*Kean v. Wal Mart Stores, Inc.*

    919 N.E.2d 926 (Ill. 2009) ....................................................................................... 18

*Kubiak v. City of Chicago*

　810 F.3d 476 (7th Cir. 2016) ....................................................... 2

*Labriola v. Clinton Entertainment Management, LLC*

　No. 15 C 4123, 2016 WL 1106862 (N.D. Ill. March 22, 2016) ................................ 27

*Ladegaard v. Hard Rock Concrete Cutters, Inc.*

　2004 WL 1882449 (N.D. Ill. March. 23, 2003) ........................................ 24

*Llorca v. Sheriff, Collier Cnty., Fla.*

　893 F. 3d 1319 (11th Cir. 2018) ..................................................... 2

*Malloy v. Amazon.com Services, LLC*

　No. 2:22-CV-0286-ART-VCF (D. Nev.)........................................... 1, 13, 14

*Martinez v. Utilimap Corp.*

　No. 3:14-CV-310-JPG-DGW, 2014 WL 6751832 (S.D. Ill. Nov. 24, 2014) .......................... 26

*Mattis v. State Universities Retirement System*

　212 Ill.2d 58 (Ill. 2004)........................................................ 17

*Meadows v. NCR Corp.*

　2017 WL 5192009 (N.D. Ill. Nov. 9, 2017) ............................................ 24

*Michael Reese Hosp. & Med. Ctr. v. Chi. HMO, Ltd.*

　554 N.E.2d 472 (Ill.App.Ct.1990) .................................................. 27

*Mitchell v. JCG Industries, Inc.*

　745 F.3d 837 (7th Cir. 2014) ................................................ passim

*Mooney v. Wyndham Worldwide Operations, Inc.*

　2014 WL 2959270 (N.D. Ill. July 1, 2014)............................................ 27

*O'Brien v. Encotech Constr.*

　2004 WL 609798 (N.D. Ill. March 23, 2004)........................................... 24

*People ex rel. Madigan v. Illinois Com. Comm'n*

　231 Ill. 2d 370 (2008) .......................................................... 19

*Perez v. Walmart, Inc.*

　2021 WL 5741484 (E.D. Mo. Oct. 25, 2021) ........................................... 15

iv

*Pietrzycki v. Heights Tower Service, Inc.*

    290 F. Supp. 3d 822 (N.D. Ill. November 29, 2017) ............................................................. 20

*Pipich v. O'Reilly Auto Enterprises, LLC*

    2022 WL 788671 (S.D. Cal. Mar. 15, 2022) ........................................................ 15

*Pizano v. Big Top & Party Rentals, LLC*

    2017 WL 1344526 (N.D. Ill. Apr. 12, 2017) ........................................................ 24

*Rix v. UPS*

    2007 WL 9813347 (N.D. Ill. Apr. 24, 2007) ........................................................ 23

*Roberts v. State of Arizona*

    512 P.3d 1007 (Ariz. 2022) ........................................................................ 22

*Sanford v. Preferred Staffing Inc.*

    447 F. Supp. 3d 752 (E.D. Wis. 2020) ............................................................... 3

*Scott v. Raudin McCormick, Inc.*

    No. Civ. A. 08-4045-EFM, 2009 WL 3561301 (D. Kan. Oct. 30, 2009) ................................. 10

*Sehie v. City of Aurora*

    432 F.3d 749 (7th Cir. 2005) ........................................................... 10, 11, 13

*Silverman v. City Engineering Const. Co.*

    228 Ill. 154 (Ill. 1930) ............................................................................ 22

*Spoerle v. Kraft Foods Global, Inc.*

    614 F.3d 427 (7th Cir. 2010) ....................................................................... 17

*Steger v. Life Time Fitness, Inc.*

    2015 WL 5307708 (N.D. Ill. Sept. 10, 2015) ....................................................... 26

*Steiner v. Mitchell*

    350 U.S. 247 (1956) .......................................................................... passim

*Sup v. Cervenka*

    331 Ill. 459, 163 N.E. 396 (1928) ................................................................... 22

*Vaccaro v. Amazon.com.dedc, LLC*

    No Civ. A. 18-11852, 2021 WL 1022699 (D.J.J. March 17, 2021) .............................. 1, 13, 14

*Wagner v. Air Methods Corporation*

    539 F. Supp. 3d 1157 (D. Colo. 2021)........................................................ 18, 21, 23

## Statutes

29 U.S.C § 256 ...................................................................................................... 25

29 U.S.C. § 203(o) ............................................................................................... 25

29 U.S.C. § 254(a) ............................................................................................... 25

29 U.S.C. § 259(a) ............................................................................................... 25

29 U.S.C. §§ 206, 207, 216(b) .............................................................................. 2

29 U.S.C. §255 ..................................................................................................... 25

29 U.S.C. §260 ..................................................................................................... 25

820 ILCS 104/4a ................................................................................................... 22

## Other Authorities

29 C.F.R. § 778.223 .............................................................................................. 18

29 C.F.R. § 785.7 ................................................................................................. 20

29 C.F.R. § 790.6(b) ............................................................................................. 16

29 C.F.R. § 790.7(h) (1999) ................................................................................... 2

29 CFR § 785.43 .............................................................................................. 9, 10

29 CFR §790.2(a) n.8 ........................................................................................... 20

93 Cong. Rec. 2098 .............................................................................................. 20

Ill. Admin. Code

    tit. 56, § 210.110 ............................................................................................ 18

Wage & Hour Div. Opinion Letter

    1989 WL 1595239 (Aug. 2, 1989) ................................................................. 9, 10

Wage & Hour Div. Opinion Letter

    1997 WL 998039 (Dec. 15, 1997) ................................................................. 9, 10

Wage & Hour Div. Opinion Letter

    1997 WL 998042 (Oct. 7, 1997) ......................................................................... 9

Wage & Hour Div. Opinion Letter

    1998 WL 852652 (Jan. 26, 1998) ......................................................................... 9, 10

Wage & Hour Div. Opinion Letter

    2001 WL 1558768 (Feb. 16, 2001)............................................................................. 9

## I.    INTRODUCTION

In response to the COVID-19 pandemic, Amazon instituted a company-wide policy requiring each of its hourly paid warehouse employees to complete a COVID-19 screening *prior* to clocking-in each shift. Under this policy, employees were required to wait in line, answer questions about their health, and undergo a health screening without pay. The screenings were required by Amazon as a condition to work each day and occurred on Amazon's premises. Plaintiffs' Second Amended Complaint alleges Amazon's failure to pay for this work time violates the Fair Labor Standards Act ("FLSA") because these required COVID-19 screenings were primarily for Amazon's benefit and were "integral and indispensable" to the Plaintiffs' work for Amazon, and violate the Illinois Minimum Wage Law ("IMWL") because they took place on Amazon's premises under Amazon's control. Plaintiffs also allege that Amazon's failure to pay for this work time violates the Illinois Wage Payment and Collection Act ("IWPCA"), or alternatively gives rise to a claim for quantum meruit.

Amazon's Motion to Dismiss Plaintiffs' FLSA claims have no merit. Its arguments have been rejected by *every* court to have considered them.[1] Amazon's arguments with regard to Plaintiffs' IMWL claims likewise fail. Amazon ignores both the text of the IMWL – which does not incorporate the FLSA's Portal to Portal Act provisions – and disregards controlling Seventh Circuit authority that the federal Portal Act provisions relating to the compensability of preliminary and postliminary time are not lock step with different Illinois state law. As explained below, Amazon's arguments with regard to Plaintiffs' IWPCA and quantum meruit claims fare no better.

---

[1] *Malloy v. Amazon.com Services, LLC*, No. 2:22-CV-0286-ART-VCF (D. Nev.), Exhibit 1, Tr. of Proceedings, (2) *Boone v. Amazon.com Services, LLC*, 562 F. Supp. 3d 1103, 1116-17 (E.D. Cal. 2022); and (3) *Vaccaro v. Amazon.com.dedc, LLC*, No Civ. A. 18-11852, 2021 WL 1022699 (D.J.J. March 17, 2021).

## II.    ARGUMENT

### A.    Applicable Legal Standard

In considering a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016). If a complaint alleges "enough facts to state a claim to relief that is plausible on its face," a motion to dismiss should be denied. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### B.    Plaintiffs' FLSA Claims Plausibly State a Claim

#### 1.    Plaintiffs have pled sufficient facts that the time spent in the COVID-19 screenings is "integral and indispensable" to their principal work activities

The FLSA is "designed to protect workers from the twin evils of excessive work hours and substandard wages." *Howard v. City of Springfield*, 274 F.3d 1141, 1148 (7th Cir. 2001). To advance that goal, the statute requires payment of minimum wages and overtime pay, and gives employees deprived of these payments the right to receive them. *See generally* 29 U.S.C. §§ 206, 207, 216(b). The Supreme Court has stated that activities performed by an employee "before or after the regular work shift" are "an integral and indispensable part of the principal activities" of the employee and must be compensated. *Steiner v. Mitchell*, 350 U.S. 247, 253 (1956).

Whether an activity is "integral and indispensable" is "<u>fact-intensive</u>" and "not amenable to bright-line rules." *Llorca v. Sheriff, Collier Cnty., Fla*., 893 F. 3d 1319, 1324 (11th Cir. 2018) (emphasis added); 29 C.F.R. § 790.7(h) (1999) ("[A]n activity which is a 'preliminary' or 'postliminary' activity under one set of circumstances may be a principal activity under other conditions."). Courts have consistently required employees to be compensated for the following activities: "<u>undergoing security screenings</u>, receiving preshift briefings, and managing necessary equipment" prior to the start of their shifts or after the end of their shifts. *Sanford v. Preferred*

*Staffing Inc.*, 447 F. Supp. 3d 752, 755 (E.D. Wis. 2020) (collecting cases) (emphasis added). Here, the COVID-19 screenings are compensable because they (1) were required by Amazon each shift, (2) Amazon employees were required to pass the screening as a condition to work each day, and (3) the screenings were designed so that Amazon employees could perform their work each day, ensuring that Amazon could make billions in profits.

The seminal case explaining which activities are compensable under the FLSA is *Steiner v. Mitchell*, 350 U.S. 247 (1956), where the employer operated a plant where batteries were manufactured. *Id*. at 249. During the manufacturing process, chemicals used in the plant spilled, dropped, or became part of the dust in the air. *Id*. These dangerous chemicals attached to the skin, clothing, and hair of the employees. *Id*. at 250. To protect the workers and their families, the workers were required to shower at the end of their shifts. *Id*. The Supreme Court held that the time spent showering by the workers was directly related to the workers' principal activities by making the "plant as safe a place as is possible under the circumstances and thereby increase the efficiency of its operation." *Id*. at 251-252. Therefore, the Supreme Court held that the time spent showering at the <u>end of the shifts</u> was compensable under the FLSA. *Id*. at 256. The Supreme Court stated as follows:

> We find no difficulty in fitting the facts of this case to that conclusion because it would be difficult to conjure up an instance where changing clothes and showering are more **clearly an integral and indispensable part of the principal activity** of the employment than in the case of these employees.

*Id*. (emphasis added).

Just like in *Steiner*, the COVID-19 screenings were integral and indispensable to the principal activities of the Plaintiffs because the screenings were (1) designed to make the workplace as safe as possible and thereby increase the efficiency of Amazon's operations, (2) were for the safety of the workers and their families, (3) without the screenings, the Plaintiffs and Class

Members (and their families) would get sick, and (4) sick workers would be unable to perform their work for Amazon.

Specifically, the Plaintiffs plead the following facts in their Second Amended Complaint ("SAC") which, taken as true, more than establish that the COVID-19 screenings were "integral and indispensable" to the work performed by the Plaintiffs.

¶ 47 Indeed, Amazon required Plaintiffs and the Class Members to undergo this screening for the purposes of overall safety in the Amazon facilities and to prevent Plaintiffs and the Class Members from inadvertently and unintentionally infecting the Amazon facilities or Amazon products, and in turn, Amazon's customers. Likewise, the job duty of Plaintiffs and the Class Members was to serve the customers of Amazon and the screening was necessary to ensure that Plaintiffs and the Class Members safely provide that service to Amazon's customers.

¶ 48 The COVID-19 examinations were necessary to ensure that the virus did not infect the Amazon facilities or customers. The examinations were also necessary to ensure that the virus did not disrupt the work performed by Plaintiffs and the Class Members or affect the business operations of Amazon. If Amazon did not have the COVID-19 screening, workers could inadvertently or unintentionally bring the virus into the Amazon facilities causing a mass breakout of the virus infecting hundreds to thousands of other workers of Amazon. Plaintiffs and the Class Members could not perform their work for Amazon if there was a mass breakout of the virus at the Amazon facilities. Furthermore, the COVID-19 virus directly affects the health of workers. If Plaintiffs and the Class Members became infected with the virus, their health would suffer. Symptoms of the virus include fatigue, lack of strength, coughing, headaches, and other symptoms. Plaintiffs and the Class Members could not perform their work for Amazon if they were infected with the virus.

¶ 49 Moreover, the COVID-19 screenings were integral and indispensable to the principal activity and primary job duty performed by Plaintiffs and the Class Members, which was to serve and assist Amazon customers receiving their purchased items. The COVID-19 screenings were necessary for Plaintiffs and Class Members to perform their primary job duty for Amazon. If Amazon cancelled the COVID-19 screenings, the Amazon facilities could get contaminated with the virus, the items that Amazon sold could get contaminated with the virus, the customers could get infected, and other employees of Amazon could get infected. In that event, Amazon's business would be disrupted, and Plaintiffs and Class Members would not be able to do their work. Therefore, the COVID-19 screenings were necessary to ensure that Plaintiffs and Class Members could do their jobs for Amazon.

¶ 50 The COVID-19 screenings were also integral and indispensable to the principal activity and primary job duty performed by Plaintiffs and the Class Members because the COVID-19 screenings were necessary to ensure that Amazon workers could perform their work safely, to prevent contamination from the virus, and to keep the customers of Amazon

safe.  If employees became infected with the virus, they would not be able to provide their services to Amazon.  Moreover, if Amazon customers received packages that were infected with the virus, the customers would likely no longer use Amazon's services.

¶ 51 Thus, the COVID-19 screenings were necessary for the Plaintiffs and Class Members to do their work for Amazon and without the screenings, their ability to do their jobs would have been compromised.  Plaintiffs and the Class Members could not skip the screenings altogether without the safety or effectiveness of their principal activities being substantially impaired.  The screenings prevented the COVID-19 virus from spreading through Amazon's facilities and infecting employees and products, thereby allowing Amazon employees to continue to work.

(Dkt. 16 at p. 9-10).

These allegations establish that the time spent in the COVID-19 screenings are "integral" and "indispensable." (*See id*.)  Plaintiffs plead that the COVID-19 screenings are "integral" to their principal activities because the "job duty of Plaintiffs and the Class Members was to serve the customers of Amazon and the screening was necessary to ensure that Plaintiffs and the Class Members safely provide that service to Amazon's customers." (*Id*. at ¶ 47).  Indeed, "[i]f employees became infected with the virus, they would not be able to provide their services to Amazon." (*Id.* at ¶ 50).  "Symptoms of the virus include fatigue, lack of strength, coughing, headaches, and other symptoms.  Plaintiffs and the Class Members could not perform their work for Amazon if they were infected with the virus." (*Id*. ¶ 48). The facts pled by the Plaintiffs are nearly identical to the facts in *Steiner*.

Similarly, the facts pled by Plaintiffs establish that the COVID-19 screenings were "indispensable" because "[i]f Amazon did not have the COVID-19 screening, workers could inadvertently or unintentionally bring the virus into the Amazon facilities causing a mass breakout of the virus infecting hundreds to thousands of other workers of Amazon.  Plaintiffs and the Class Members could not perform their work for Amazon" in that event. (*Id*.)  Indeed, "[i]f employees became infected with the virus, they would not be able to provide their services to Amazon." (*Id*.

¶ 48). Amazon concedes these facts. (*See, e.g.*, Dkt. 22 at p. 2 stating "a healthy workforce []
allowed Amazon to continue its operations."). These facts are nearly identical to those in *Steiner*.

Amazon tries to distinguish *Steiner* by stating that the "changing of clothes and showering"
by the workers in *Steiner* "were intrinsic parts of the principal activity of producing batteries."
(Dkt. 22 at p. 10). If anything, Amazon's argument supports Plaintiffs' position. If taking showers
and changing clothes is "intrinsic" to manufacturing batteries on an assembly line, then completing
mandatory health screenings to ensure that employees are physically able to perform their lifting,
stacking, and loading duties, is likewise "intrinsic" to their job and is likewise compensable.

In the Second Amended Complaint, Plaintiffs plead that the COVID-19 screenings were
necessary to ensure that Amazon workers could perform their job. (*See* Dkt. 16 at ¶¶ 47-51). In
simpler terms, the Plaintiffs gathered packages to be delivered to Amazon customers. (*Id.* at ¶¶ 27,
29, 50). If Plaintiffs contracted COVID-19 or those packages were contaminated by COVID-19,
the Plaintiffs could not perform their work. (*See id.* at ¶ 48). Likewise, if an Amazon employee
became infected with COVID-19 and spread the virus to other workers, Plaintiffs could not provide
their services to Amazon's customers. (*See id.*) "Plaintiffs and the Class Members could not skip
the screenings altogether without the <u>safety and effectiveness</u> of their principal activities being
impaired." (*Id.* at ¶ 51) (emphasis added). Again, these facts demonstrate that the COVID-19
screenings were necessary for the Plaintiffs to perform their work and thus, "integral and
indispensable" to the Plaintiffs' principal activities.

Amazon's opposition relies almost exclusively on *Integrity Staffing Solutions, Inc. v. Busk*,
574 U.S. 27 (2014). However, that reliance is misplaced. In *Busk*, the plaintiffs were warehouse
workers who retrieved packages from shelves. *Busk*, 574 U.S. at 29-30. After their shifts had
concluded, the workers underwent an exit screening so the employer could identify if any theft

occurred. *Id*. Although the Supreme Court held that the time spent in the exit screening was not compensable, the Supreme Court did not state that such a screening can never be compensable. Instead, the Court made clear that the screening must be tied to the "productive work that the employee is employed to perform." *Id*. at 36. In *Busk*, the exit screening did not have anything to do with the workers' ability to do their jobs and the workers were able to do their jobs even if the screenings were eliminated. *See Id*. The Court stated that the company "could have eliminated the screenings altogether without impairing the employees' ability to complete their work." 574 U.S. at 35. In this case, however, the COVID-19 screenings were necessary for Plaintiffs to perform their work for Amazon and had the screenings been eliminated, Plaintiffs' ability to perform their jobs would have been compromised. (Dkt. 16 at ¶¶ 47-51).[2]

The *Busk* decision was issued nearly 10 years ago, and since then numerous courts have distinguished *Busk* and found pre-shift activities to be compensable under the FLSA. For instance, in *Aguilar v. Mgmt & Training Corp*., 948 F.3d 1270 (10th Cir. 2020), the court held that pre-shift security screenings were compensable under the FLSA and found that *Busk* did not apply. In *Aguilar*, a group of correctional officers brought a claim for unpaid wages. *Id*. at 1274. The plaintiffs argued that the time spent completing mandatory security screenings (prior to clocking in) was compensable under the FLSA. *Id*. at 1274-75. The Tenth Circuit agreed and found that this time was "integral and indispensable" to the correctional officers' principal activities in ensuring the safety of the prisons. *Id*. at 1278-79. Specifically, the *Aguilar* Court found the security

---

[2] Amazon also cites to *Chagoya v. City of Chicago*, 992 F.3d 607 (7th Cir. 2021). However, *Chagoya* is not relevant to this case because it involved a group of police officers who sought compensation for the time they spent unloading equipment at their homes. *Id*. *Chagoya* is easily distinguishable on the facts. *Chagoya* did not involve a claim for compensation for pre-shift health screenings that (1) were performed on the premises of the employer, (2) were required by the employer, and (3) were made a condition to work for the employer each day. Applying the Rule 12 standard, those facts are currently undisputed. And, those facts did not exist in *Chagoya*.

7

screenings to be an intrinsic element of the correctional officers' principal activities in providing safety and security at the prisons and was directly tied to the "productive work that the employee is employed to perform." *Id*. at 1277-78. The Tenth Circuit further explained that if the security screenings were eliminated entirely, the correctional officers' work would be impaired. *Id*. at 1279. This demonstrated that the security screenings were indispensable to the correctional officers' principal activity. *Id*.

The facts in *Aguilar* support Plaintiffs' position that the COVID-19 screenings are compensable. Here, the COVID-19 screenings were necessary to ensure that the Plaintiffs could perform their work. If Amazon eliminated the COVID-19 screenings, the work of the Plaintiffs would be greatly impaired because workers could inadvertently or unintentionally bring the virus into the Amazon facilities causing a mass breakout and infecting other workers. (Dkt. 16 at ¶¶ 47-51). This would lead to a disruption in the operations and would prevent Plaintiffs from performing their work. (*Id*.) Accepting these facts as true states a viable claim that the COVID-19 screenings are compensable under the FLSA.

Amazon argues that "Plaintiffs still would have been able to move, stack, and load boxes had Amazon eliminated" the COVID-19 screenings. (Dkt. 22 at p. 7). There are simply no facts or evidence to support this statement. COVID-19 causes fatigue, muscle aches, makes it difficult to breath, nausea and other conditions.[3] If Amazon employees had these symptoms, they would be unable to perform the physical tasks of "mov[ing], stack[ing], and load[ing] boxes," which was their primary job for Amazon. Amazon claims that Plaintiffs "do not demonstrate that Plaintiffs would have been incapable of completing the *specific* duties that they were hired to perform" without the COVID-19 screenings. (*Id*. at p. 7-8). It is unclear why Amazon has made this

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited April 9, 2023).

argument because that is precisely what Plaintiffs have pled. (*See* Dkt. 16 at ¶¶ 47-51). If the Court accepts Plaintiffs' allegations as true, the Court has no choice but to deny Amazon's Motion.

Finally, Amazon argues that "[c]ountless activities can help ensure one's general ability to work—like eating properly" or "sleeping enough" and therefore, the COVID-19 screenings should be found to be not compensable as a matter of law. (Dkt. 22 at p. 8). This argument from Amazon is odd. Unlike "eating properly" or "sleeping enough," the COVID-19 screenings were (1) made mandatory by Amazon, (2) Plaintiffs had to complete the screenings on the premises of Amazon, (3) Plaintiffs had to complete the screenings under the threat of discipline, (4) Plaintiffs only completed the screenings at the direction of Amazon, and (5) Plaintiffs had to pass the screenings as a requirement to work each day. (*See* Dkt. 16 at ¶¶ 42-45). Getting enough sleep or eating healthy do not constitute "work" under the FLSA. Amazon's Motion should be denied.

### 2. The U.S. Department of Labor has issued authority providing that the time spent in health examinations, like the COVID-19 screenings, is compensable under the FLSA

United States Department of Labor ("DOL") regulatory guidance provides that the time spent in physical, medical, and health examinations, like the COVID-19 screenings, is compensable work time. *See, e.g.,* 29 CFR § 785.43. The DOL has issued multiple opinion letters providing that physical and health examinations required by an employer as a work condition are compensable under the FLSA. *See, e.g.,* Wage & Hour Div. Opinion Letter, 1989 WL 1595239 (Aug. 2, 1989); Wage & Hour Div. Opinion Letter, 1997 WL 998042 (Oct. 7, 1997); Wage & Hour Div. Opinion Letter, 1997 WL 998039 (Dec. 15, 1997); Wage & Hour Div. Opinion Letter, 1998 WL 852652 (Jan. 26, 1998); Wage & Hour Div. Opinion Letter, 2001 WL 1558768 (Feb. 16, 2001).[4]

---

[4] Courts have relied upon this guidance and found that medical examinations required by the employer constitute compensable time. *See, e.g., Scott v. Raudin McCormick, Inc.,* No. Civ. A. 08-4045-EFM, 2009

Significantly, the 1989 Opinion Letter states that "whenever an employer imposes special requirements or conditions that an employee must meet before commencing productive work, the time spent in fulfilling such special conditions is regarded as <u>indispensable</u> to the performance of the principal activity the employee is hired to perform." 1989 WL 1595239, at *1 (emphasis added). There can be no reasonable dispute that the COVID-19 screenings satisfy this requirement.

The DOL has further explained:

> Time spent undergoing a physical examination is time during which the employee's freedom of movement is restricted for the purpose of serving the employer and time during which the employee is subject to the employer's discretion and control. It is immaterial whether the time spent in undergoing the required physical examination is during the employee's normal working hours or during nonworking hours. The physical examination is an essential requirement of the job and thus primarily for the benefit of the employer. **<u>Therefore, it is our opinion that the time so spent must be counted as hours worked under the FLSA.</u>**

1998 WL 852652, at *1 (emphasis added).

Amazon has largely ignored this authority. Instead, Amazon argues that 29 C.F.R. § 785.43 is not applicable because the screenings did not occur "during normal working hours." (Dkt. 22 at p. 5 fn. 2). However, Amazon's argument was specifically rejected by the Seventh Circuit in *Sehie v. City of Aurora* wherein the Seventh Circuit stated that "[w]e disagree with [the employer's] rigid reading of the regulation." *Sehie v. City of Aurora*, 432 F.3d 749, 752 (7th Cir. 2005).

In *Sehie*, the Seventh Circuit addressed the issue of whether a health examination required by an employer as a condition to work is compensable under the FLSA. *Id*. at 751-53. In *Sehie*, the plaintiff worked as an emergency dispatcher whose primary job duty was to field 911 calls. *Id*. at 750. The employer required the plaintiff to undergo a psychotherapy evaluation as a condition

---

WL 3561301, at *12 (D. Kan. Oct. 30, 2009); *In Borne v. AAY Sec. LLC*, No. Civ. A. 1:17-CV-510, 2019 WL 5394010, at *5 (E.D. Tex. Oct. 21, 2019).

of her employment. *Id.* The employer argued that such time attending the health sessions was not compensable under the FLSA. *Id.* The Seventh Circuit rejected the employer's arguments and stated as follows:

> the DOL has also issued opinions concluding that when an employer requires an employee to attend physical or mental examinations, including psychiatric examinations, during non-working hours as a condition of continued employment, the time spent undergoing such examinations constitutes "hours worked" **and is therefore compensable under the FLSA.**

*Id.* at 753. The Seventh Circuit stated further.

> the purpose of the required counseling sessions was to enable Sehie to perform her job duties and relate to co-workers more effectively and at a higher skill level… and in doing so to ensure that Sehie properly responded to emergency calls and stayed on the job in a position that was short-staffed.

*Id.* at 752.

The facts in *Sehie* are very similar to the facts in the present case. Like in *Sehie*, Plaintiffs were required to undergo a health examination as a condition to work for Amazon each day. These examinations were designed so that Plaintiffs could continue to perform their job duties and that Amazon could continue to operate. Like in *Sehie*, the time spent by the Plaintiffs in the COVID-19 screenings is compensable.

Amazon argues that the COVID-19 screenings are not a physical, medical, or health examination referenced by the DOL. (*See* Dkt. 22 at p. 6). Amazon is wrong. Plaintiffs allege that during the screenings they (1) had their temperature taken to determine if they had a fever, (2) answered questions about their health to determine whether they had the signs and symptoms of COVID-19, (3) wore a face mask to prevent the spread of the virus, and (4) had to pass this health screening to be deemed fit to work. (*See* Dkt. 16 at ¶ 38). These facts demonstrate that the screenings constitute a health examination and/or medical attention.

Amazon further argues that the DOL opinion letter regarding the "rocket-powder plant" cited in *Busk* is applicable to this case. (Dkt. 22 at p. 10).[5] *See Busk*, 574 U.S. at 35-6. The screenings at the powder plant involved a pre-shift security search of employees for "matches" and "cigarette lighters," and a post-shift security search of the employees "for the purpose of preventing theft." *Id*. Those screenings are distinguishable because they are not health examinations, and they have nothing to do with the workers' ability to physically perform their work. For instance, if an employee brought a lighter to work at the plant, he could still perform his job. However, if an Amazon employee arrived at work suffering the effects of the virus, there is no way he could perform his work that day.

Finally, if there was any doubt, the DOL issued guidance specific to COVID-19 screenings and stated as follows:

> your employer is required to pay you for all hours that you work, including for time before you begin your normal working hours if the task that you are required to perform is necessary for the work you do. **For many employees, undergoing a temperature check before they begin work must be paid because it is necessary for their jobs.**

*See* Exhibit 2, at 4 (emphasis added), also found at

https://www.dol.gov/agencies/whd/flsa/pandemic (last visited April 10, 2023).

Under the DOL's guidance, the time spent by Plaintiffs completing the COVID-19 screenings is compensable.

### 3. Amazon's Motion to Dismiss should be denied because the facts pled by the Plaintiffs establish that Amazon primarily benefited from the COVID-19 screenings.

Amazon argues that the COVID-19 screenings were not "necessarily and primarily for the benefit" of Amazon but for Plaintiffs and the communities at large. (Dkt. 22 at p. 11). Under both

---

[5] The DOL issued that opinion letter in 1951.

the *Steiner* and *Sehie* decisions, Amazon is again wrong. In *Steiner*, the Supreme Court determined that the time spent showering by the workers at the end of their shifts directly benefited the employer by making the "plant as safe a place as is possible under the circumstances and thereby increase the efficiency of its operation." *Id*. at 251-252. Similarly, in *Sehie*, the counseling sessions were found to be primarily for the employer's benefit because the sessions were to "enable Sehie to perform her job duties and relate to co-workers more effectively and at a higher skill." *Sehie*, 432 F.3d at 752. The counseling sessions also enabled her to "stay on the job" so that the company would not be short staffed. *Id*. The Seventh Circuit held that "[t]hese reasons all primarily benefit [the employer]." *Id*. Like in *Steiner* and *Sehie*, the COVID-19 screenings necessarily and primarily benefitted Amazon. (*See* Dkt. 16 at ¶¶ 52-54).[6]

Amazon argues that Plaintiffs were the primary beneficiaries because the "benefit of screenings was reducing the risk of death or illness from COVID-19." (Dkt. 22 at p. 12). Every other court has rejected Amazon's same arguments. *Boone v. Amazon.com Services, LLC*, 562 F. Supp. 3d 1103, 1116-17 (E.D. Cal. 2022); *Vaccaro v. Amazon.com.dedc, LLC*, No. Civ. A. 18-11852, 2021 WL 1022699 (D.J.J. Mar. 17, 2021); *Malloy v. Amazon.com Services, LLC*, No. 2:22-CV-0286-ART-VCF (D. Nev.), Exhibit 1, Tr. of Proceedings. In particular, in *Boone*, the court stated:

> plaintiffs have sufficiently alleged that the COVID-19 screening policy primarily benefits defendant. The court is not persuaded by defendant's argument that it is only an incidental beneficiary of the screenings because every other member of the community likewise benefits from the prevention of infection. (Doc. No. 30 at 9–10)… if Amazon facilities suffered an infection outbreak, defendant would potentially have to find new employees or shut down its warehouse until it was safe to open again. Such an outbreak would harm defendant Amazon directly and to a greater extent than the general public. **Given this alleged substantial risk to defendant and its business operations, it is plausibly alleged that it is defendant who primarily benefits from its decision to mitigate that risk by implementing**

---

[6] Amazon's profits skyrocketed 220% during the COVID-19 pandemic. *See* https://www.nytimes.com/2021/04/29/technology/amazons-profits-triple.html, last visited April 9, 2023.

13

**the mandatory COVID-19 screening policy.**

*Boone*, 562 F. Supp. 3d at 1117 (emphasis added).

It is unclear why Amazon has even argued that the COVID-19 screenings were not for Amazon's benefit. Amazon concedes that it "could continue to use its workforce only if Plaintiffs and their co-workers first remained free of COVID-19." (Dkt. 22 at p. 12). In other words, Amazon admits that if its employees contracted the virus, Amazon could not continue to operate its business. (*See id*.) Having business operations continue without interruption undoubtedly increases the profits of Amazon. Likewise, having employees who are healthy and able to perform the work ensures that Amazon can operate efficiently, and thereby, earn profits. Indeed, Amazon's profits skyrocketed 220% during the pandemic, as noted earlier. Under these facts, the COVID-19 screenings were primarily for the benefit of Amazon.

4.    **To date, *every* federal court to have considered Amazon's Arguments Have Allowed the Claims to Advance Past the Pleading Stage**

Amazon wrongly claims that "nearly every court that has considered a motion to dismiss an employee's FLSA claim based on COVID-19 screening time has granted the motion." (Dkt. 22 at p. 8). First, every court that has analyzed ***Amazon's*** own arguments regarding the FLSA compensability of COVID-19 screenings has rejected Amazon's arguments to dismiss the claim at the pleading stage. *See Boone*, 562 F. Supp. 3d 1103; *Vaccaro*, 2021 WL 1022699; Ex. 1, *Malloy v. Amazon.com Services, LLC*, No. 2:22-CV-0286-ART-VCF (D. Nev.), Tr. of Proceedings. Other courts have reached the same conclusion. *See, e.g., Harwell-Payne v. Cudahy Place Senior Living LLC*, No. Civ. A. 21-CV-328-PP, 2022 WL 6195619 (E.D. Wisc. Sept. 30, 2022) (denying the employer's motion to dismiss FLSA claim seeking compensation for the time spent in COVID-19 screenings).

14

Second, the cases cited by Amazon are distinguishable from the facts of this case. Amazon's reliance on *Perez v. Walmart, Inc*., 2021 WL 5741484 (E.D. Mo. Oct. 25, 2021) is misplaced because in *Perez*, the plaintiffs did not bring a claim under the FLSA, they brought a claim under the Missouri common law for unjust enrichment. Amazon also failed to disclose that there is another case against Walmart under the FLSA seeking compensation for COVID-19 screening time. That case is *Haro v. Walmart* and plaintiffs recently obtained certification of a national class against Walmart under the FLSA.[7] *See Haro v. Walmart, Inc*., 2023 WL 22393333 (E.D. Cal. Feb. 27, 2023) (granting conditional certification under FLSA for COVID-19 screening claim).

Amazon also cites a trio of decisions from the Federal Court of Claims where correctional officers employed by the federal government sought compensation for the time spent going through security screenings each morning. *See* Dkt. 22 at p. 8-9, citing *Adegbite*, 156 Fed. Cl. 495; *Adair*, 2021 WL 6163407; *Alvarez*, 2021 WL 6163405. These cases are not on point because it appears that plaintiffs simply abandoned their claims for compensation for the COVID-19 screenings because their primary claim was for compensation for the security screenings. *See id*. If anything, these cases hurt Amazon's argument because in each case, the court held that there was a viable claim under the FLSA for the time spent going through the pre-shift security screenings, which was largely akin to walking through a metal detector. *See id*.

---

[7] Amazon also cites to *Pipich v. O'Reilly Auto Enterprises, LLC*, 2022 WL 788671 (S.D. Cal. Mar. 15, 2022), however, Amazon's reliance on this decision is misleading. In *Pipich*, the plaintiff failed to plead sufficient facts explaining how the COVID-19 screenings were integral and indispensable to his principal activity. The plaintiff did not describe any set of facts that would lead to the conclusion that if the COVID-19 screenings were eliminated, the plaintiff's ability to do his job would be affected. Also, the plaintiff's job was different than the work performed by Amazon employees in warehouses that have hundreds of employees in close proximity to one another. Accordingly, the *Pipich* case is distinguishable from the facts of this case.

Finally, Amazon's efforts to distinguish the *Boone* decision fall flat. The *Boone* decision presents facts that are identical to those in this case. In *Boone*, the court carefully considered both sides' arguments and wrote a detailed analysis as to why the claim for compensation for COVID-19 screenings is viable under the FLSA. Amazon has not presented any valid argument to the contrary. For these reasons, Amazon's Motion to Dismiss must be denied.[8]

### C.    Plaintiffs Plausibly Allege a Claim Under the IMWL

The fundamental error in Amazon's argument to dismiss the IMWL is its presumption that Illinois law incorporates the provisions of the federal Portal-to-Portal Act. It does not, as the 7th Circuit held in *Mitchell v. JCG Industries, Inc.,* 745 F.3d 837, 838 (7th Cir. 2014). This dissimilarity between the FLSA and IMWL is unsurprising, as Congress expressly permitted states to enact laws that provide employees with more generous rights to minimum and overtime wages. 29 U.S.C. § 218(a); *Spoerle v. Kraft Foods Global, Inc.,* 614 F.3d 427, 429 (7th Cir. 2010). And although the FLSA and the IMWL are similar, they are not identical. "Where the IMWL and FLSA differ, they must be interpreted differently." *Driver v. AppleIllinois, LLC*, 917 F. Supp. 2d 793,

---

[8] In footnote 8 in Amazon's Motion, it claims that any time spent walking from the screening area to the time clock should also be dismissed. (Dkt. 22 at p. 11 fn. 8). Amazon provides little analysis for this argument. If the Court finds that there is a viable claim for compensation for the time spent in the COVID-19 screenings, then the time spent walking from the screening area to the time clocks is also compensable. Amazon's argument ignores the "continuous workday" rule. The continuous workday rule provides that once the first compensable activity is performed, then all subsequent activities are compensable regardless of the amount of time each specific activity takes and the Portal-to-Portal Act exclusions do not apply. *See* 29 C.F.R. § 790.6(b); *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005). The continuous workday rule requires compensation from the start of the first compensable activity to the last compensable activity. See *id.*; *see also Aguilar,* 948 F.3d at 1279 (collecting cases). Thus, the Plaintiffs are entitled to compensation for the activities performed *after* their first principal act and *before* their last principal act of each shift. *Id.* In *IBP, Inc. v. Alvarez*, the Supreme Court explicitly held that walking time which occurs after the performance of an employee's first principal activity of the day is compensable under the FLSA because it is part of the continuous workday. *IBP, Inc.*, 546 U.S. at 37 ("during a continuous workday, any *walking time* that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity. . . is covered by the FLSA") (emphasis added). Given that the time spent undergoing the COVID-19 screenings is compensable, then all activities that occur afterward are compensable.

799 (N.D. Ill. 2013). Because differences exist between the FLSA and the IMWL, it is possible for an employer to be liable under the IMWL, but not the FLSA. *Mitchell v. JCG Industries, Inc.,* 745 F.3d 837, 838 (7th Cir. 2014). Of course, it is also possible for an employer to be liable under both.

### 1. Under the IMWL, Hours Worked Includes All Time the Employee is Required to Be on the Employer's Premises

The issue before the Court on Plaintiffs' IMWL claim is a straightforward question of statutory interpretation. To the extent the alleged time spent on COVID-19 screenings is "hours worked" under the IMWL, Plaintiffs have met their pleading requirement on their IMWL claim. Courts must interpret the IMWL consistent with the intention of the Illinois General Assembly. *Mattis v. State Universities Retirement System,* 212 Ill.2d 58, 76 (Ill. 2004).[9] The best evidence of the legislature's intent is the statute's language. *Mattis,* 212 Ill.2d at 76. "If the legislative intent can be discerned from the statutory language, this intent must prevail, and no resort to other tools of statutory construction is necessary." *Id.* The IMWL states:

> Except as otherwise provided in this Section, no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 1/2 times the regular rate at which he is employed.

820 ILCS 104/4a. Section 4a(2) identifies a number of exceptions to an employer's obligation to pay overtime wages, but no provision excepts payment for preliminary or postliminary work activities. *Id.*

The Illinois Minimum Wage Law does not define the term "hours." However, the regulations issued by the Illinois Department of Labor ("IDOL") defines "hours worked" as "all

---

[9] This court must also interpret the IMWL consistent with how it expects the Illinois Supreme Court would interpret it. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

the time an employee is required to be on duty, *or on the employer's premises*, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer." Ill. Admin. Code, tit. 56, § 210.110 (emphasis added). Amazon ignores that the Illinois legislature expressly granted the IDOL authority to "make and revise administrative regulations, including definitions of terms, as he deems appropriate to carry out the purposes of this Act, to prevent the circumvention or evasion thereof, and to safeguard the minimum wage established by the Act," and because this regulation is consistent with the IMWL, it has "the force and effect of law." *Wagner v. Air Methods Corporation,* 539 F. Supp. 3d 1157, 1167 (D. Colo. 2021) (deferring to the IDOL's definition of "hours worked"); *Mitchell v. JCG Industries, Inc.,* 745 F.3d 837, 844 (7th Cir. 2014) (deferring to the IDOL's definition of "hours worked"); *Kean v. Wal Mart Stores, Inc.,* 919 N.E.2d 926, 936 (Ill. 2009) (agency's reasonable regulations carry the "force and effect of law").[10]

The clear and unambiguous definition of "hours worked" in the IDOL regulation ends the legal analysis required to resolve Plaintiffs' IMWL claim. *People ex rel. Madigan v. Illinois Com. Comm'n*, 231 Ill. 2d 370, 380 (2008) ("Where the language of the regulation is clear and unambiguous, we must apply it as written, without resort to extrinsic aids of statutory construction."). Amazon's attempts to inject quotations from the bill's sponsor or lengthy discussions of federal law into the analysis ignores the express directive of the Illinois Supreme Court to apply the language of the statue as written, without additional extrinsic aids.

---

[10] Controlling Seventh Circuit authority requires that this Court give the IDOL's regulation deference. But Plaintiffs add that that the regulation is reasonable because, as Amazon's Motion to Dismiss concedes, it patterns language in the regulation interpreting the FLSA. *See* 29 C.F.R. § 778.223[10] ("As a general rule the term 'hours worked' will include: (1) All time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace; and (2) All time during which an employee is suffered or permitted to work whether or not he is required to do so.").

Plaintiffs' allegations fall squarely within the definition of hours worked under the applicable Illinois regulation, and thus they have alleged compensable time under the IMWL. They allege that Amazon required its hourly, non-exempt employees to undergo a COVID-19 screening on Amazon's premises before they began each shift. SAC ¶¶ 25, 42-45. Because Plaintiffs allege they worked over 40 hours a week and that they were not paid for all overtime hours they spent undergoing the COVID-19 screenings, they state a claim for unpaid overtime compensation under the IMWL. SAC ¶¶ 27, 29, 55-56, 101-103.

**2.      The IMWL Does Not Incorporate Portal-to-Portal Act Provisions**

In seeking to expand the analysis beyond the clear language of the IDOL regulation, Amazon argues that because the IMWL and FLSA are similar in some respects, the IMWL implicitly incorporates the federal 1947 Portal Act amendments.  It is those federal amendments, rather than any provision in the text of any Illinois statute or regulation, that exclude from hours worked activities that are preliminary and postliminary to the employee's principal activity.  But the Court need not follow Amazon down this path.   Illinois has never adopted the Portal Act, and the Seventh Circuit has likewise held that the Portal Act amendments were not incorporated into the IMWL.

**i. The Portal-to-Portal Act**

In 1947, Congress amended the FLSA by adding the Portal-to-Portal Act in response to the Supreme Court's decision in *Anderson v. Mt. Clemens Pottery Co.,* which held the "workweek" encompassed all time during which an employee is "necessarily required to be on the employer's premises, on duty or at a prescribed workplace." 328 U.S. 680, 690 (1946);  *Pietrzycki v. Heights Tower Service, Inc.,* 290 F. Supp. 3d 822, 844 (N.D. Ill. November 29, 2017) (explaining the Portal Act was intended to narrow the coverage of the minimum and overtime wage provisions.) The Portal Act excluded time employees spend walking, riding, or traveling to and from the place

19

where they perform their principal activities and time employees spend performing activities which are preliminary to or postliminary to their principal work activities. 29 U.S.C. § 254(a).[11]

In 1949, the Portal Act was further amended to add Section 3(o), providing that an employer does not have to pay for time spent "changing clothes or washing at the beginning or end of each workday" if such time is excluded from working time "by the express terms or by custom or practice under a bona fide collective-bargaining agreement." 29 U.S.C. § 203(o). *Mitchell,* 745 F.3d at 846 (noting this Portal provision is now Section 203(o) of the FLSA). Although the Portal Act created certain exceptions, it did not otherwise alter what constitutes hours worked under the FLSA. 29 C.F.R. § 785.7 ("The Portal-to-Portal Act did not change the rule except to provide an *exception* for preliminary and postliminary activities.") (emphasis added). Nor did the Portal Act restrict states from enacting laws that provided employees with more generous rights. 29 CFR §790.2(a) n.8.[12]

### ii. Controlling Circuit Authority Holds Hours Worked Under the IMWL Differ from Hours Worked Under the FLSA

Amazon's argument that mere *similarities* between the Illinois regulation defining "hours worked" and the federal regulations defining the workweek requires the conclusion that the IMWL incorporates the FLSA's preliminary and postliminary activity exception into Illinois law lacks any legal basis. And the Seventh Circuit has squarely rejected this leap of logic.

---

[11] The Portal-to-Portal Act also amended the FLSA by: (1) creating a two year limitations period, which was later extended to three years if the violation is willful (29 U.S.C. §255); (2) requiring a party plaintiff to file a written consent to join a collective action under the FLSA (29 U.S.C § 256); (3) creating a defense that allows employers to escape liability if they rely on a written administrative regulation or order (29 U.S.C. § 259(a); and (4) creating a defense to the imposition of liquidated damages (29 U.S.C. §260). None of these Portal provisions were incorporated into the IMWL.

[12] See also, 93 Cong. Rec. 2098. (Sen. Ferguson: "I should like to add for the record of today that this bill would not strike at the heart of or defeat any cause of action that arose out of a State statute"; Sen. Donnell: "That is correct. The Federal Government has absolutely no power, as I see it, to cancel a right existing under State statute. At any rate, we do not undertake to assert any such power.").

In *Mitchell v. JCG Industries, Inc.* the Seventh Circuit examined whether time employees spent changing clothes before and after shifts and during lunch breaks was compensable under the FLSA and IMWL. As a threshold matter, the court applied a different analysis to the IMWL than the FLSA claim. The court held the IMWL does not incorporate the Portal exclusion that is now contained in Section 203(o) of the FLSA. *Mitchell,* 745 F.3d at 844 (the IMWL "contains no counterpart to section 203(o)" of the FLSA). The Seventh Circuit deferred to the IDOL's definition of "hours worked," and recognized that it broadly encompasses all time an employee is required to be on an employer's premises unless a specific exclusion applies. *Id.* The court went on to conclude that the time at issue was not compensable under the IMWL, but for different reasons than why it was not compensable under the FLSA. *Id.* at 844-46. The Court determined an explicit meal break exception applied to the time spent changing during lunch and a *de minimus* exception applied to the time spent changing before and after the shifts. *Id.*

Under *Mitchell,* the time Amazon required its employees to undergo COVID-19 screenings on its premises is compensable. *See Wagner,* 539 F. Supp. 3d at 1168 ("The Seventh Circuit's decision in *Mitchell* suggests the most logical reason of the 'hours worked' definition. It is 'broad,' and if it would encompass time employees spend changing during a meal break on an employer's premises (but-for the meal period and *de minimus* exceptions").

### iii. The IMWL Makes No Mention to the Portal-to-Portal Act or its Provisions

The IMWL was passed 24 years after the passage of the Portal-to-Portal Act and contains no references to the Portal Act. But Amazon asks this Court to re-write the IMWL and import *one* of the Portal Act provisions into the IMWL. This is not within the Court's authority. The Illinois Supreme Court has held that courts do not have the power to write new substantive provisions into a statute:

> The courts have no legislative powers, and in the interpretation and construction of statutes their sole function is to determine, and within the constitutional limits of the legislative power to give effect to, the intention of the Legislature. They cannot read into a statute something that is not within the manifest intention of the lawmaking body as gathered from the statute itself.

*Sup v. Cervenka*, 331 Ill. 459, 462, 163 N.E. 396, 398 (1928).

The Illinois Supreme Court has repeatedly declined to rewrite statutes, and it must be presumed that the court would decline to re-write the IMWL in this instance. *Sup,* 331 Ill. at 462; *Estate of Charles W. Kent v. Vollmer,* 4 Ill.2d 81, 84 (Ill. 1954) (declining to hold that the Illinois legislature omitted words from the Probate Act by inadvertence or without intention).[13] Other states have similarly rejected the notion that the Portal-to-Portal Act was adopted into state law by silence. *Frlekin v. Apple Inc.,* 457 P.3d 526, 532-23 (Cal. 2020); *Roberts v. State of Arizona,* 512 P.3d 1007, 1015 (Ariz. 2022); *In re:Amazon.com, Inc.,* 255 A.3d 191, 201 (Pa. 2021); *Amaya v. DGS Constructions, LLC,* 278 A.3d 1216, 1239-40 (Md. 2022).

### iv. The IMWL's Adoption of Other FLSA Exclusions By Specific Reference Emphasizes the Significance of the Omitted Portal Act Provisions

The IMWL's omission of the Portal provisions from the IMWL is significant given the Illinois Legislature explicitly adopted other FLSA exclusions.[14] The canon of construction "the

---

[13] See also, *Silverman v. City Engineering Const. Co.,* 228 Ill. 154, 157 (Ill. 1930) (declining "to read into a statute something that is not within the manifest intention of the lawmaking body as gathered from the statute itself."); *Coon v. Doss,* 361 Ill. 515, 521 (Ill. 1935) ("Courts have no legislative powers and may not incorporate in a statute provisions not within the intention of the Legislature as express in the statute itself.").

[14] Specifically, the IMWL: (1) excludes from the definition of employees individuals who work for an accredited Illinois College at which they are a student and who are covered by the FLSA. Section 105/3(d)(6); (2) excludes from the overtime provisions any governmental employee who is excluded from the definition of employee under the FLSA. Section 105/4a(2)(D); (3) excludes from the overtime provisions individuals who are employed in a bona fide executive, administrative, or professional capacity as defined by the FLSA and the rules adopted under that Act as of March 30, 2003. Section 105/4a(2)(E); (4) excludes from the overtime provisions commissioned employees who are exempt under the FLSA. Section 105/4a(2)(F); (5) excludes from the overtime provisions employees who are members of a bargaining unit and whose union agreed to alternate shift schedules as allowed by the FLSA. Section

expression of one is the exclusion of others," requires a finding that the General Assembly's omission of the Portal exclusions was purposeful in light of its inclusion of other exclusions. In *Wagner v. Air Methods Corporation,* the court refused to import the FLSA's sleep time exception into the IDOL's definition of "hours worked," noting the adoption of similar exclusions under the FLSA for meal periods and travel time but not sleep time, despite being aware of the sleep time rule under federal law, demonstrated a conscious decision to depart from the FLSA. *Wagner,* 539 F. Supp. 3d at 1168-89.

### 3. Amazon Does Not Provide Direct Support that the IMWL Incorporates the Portal-to-Portal Act Provisions

Amazon's citation to a string of cases for the proposition the IMWL and FLSA define compensable work hours the same is misleading. Mtn to Dismiss at 15-16. Four of the cases cited were decided before the Seventh Circuit issued the *Mitchell* decision holding that the IMWL does not incorporate the Portal exclusions. *Guzman v. Laredo Sys., Inc.,* 2012 WL 5197792 (N.D. Ill. Oct. 19, 2012); *Rix v. UPS,* 2007 WL 9813347 (N.D. Ill. Apr. 24, 2007); *Ladegaard v. Hard Rock Concrete Cutters, Inc.,* 2004 WL 1882449 (N.D. Ill. March. 23, 2003); *O'Brien v. Encotech Constr.,* 2004 WL 609798 (N.D. Ill. March 23, 2004). The remaining cases do not analyze whether the IMWL incorporates the Portal Act exclusions for preliminary and postliminary activities, and only make the conclusory statement that "Courts have generally held that the IMWL parallels the FLSA…Thus, the same analysis generally applies to both the FLSA and IMWL." *Bartlett v. City of Chicago,* 2019 WL 4823532, at *4 (N.D. Ill. Oct. 1, 2019); *Meadows v. NCR Corp.,* 2017 WL 5192009, at *4 n.13 (N.D. Ill. Nov. 9, 2017) (stating the same in a single footnote); *Pizano v. Big Top & Party Rentals, LLC,* 2017 WL 1344526 at *1 n.1 (N.D. Ill. Apr. 12, 2017) (stating the same

---

105/4a(2)(J); and (6) provides that a governmental body is not in violation if they comply with Section 7(o) or 7(k) of the FLSA. Section 105/4a(4).

in a single footnote). In the final case cited by Amazon, *Chagoya v. City of Chicago,* the court examined the FLSA and IMWL claims together because "the parties agree that the same standard applies to the operators' claims under the FLSA and the IMWL." *Chagoya,* 992 F.3d 607, 615 n.21 (7th Cir. 2021). *Chagoya* is distinguishable. Plaintiffs do not agree that their FLSA and IMWL claims are subject to the same analysis.

### D. Plaintiffs Plausibly State a Claim Under the IWPCA

The IWPCA allows for a cause of action based on wrongfully withheld compensation pursuant to a contract or agreement. *Brown v. Club Assist Rd. Serv. U.S., Inc.,* No. 12 CV 5710, 2013 WL 5304100, at *8 (N.D. Ill. Sept. 19, 2013). The agreement need not be a "formally negotiated contract," nor must it contain the "formalities and accompanying legal protections of a contract." *Gallardo v. Scott Byron & Co.,* No. 12-CV-7202, 2014 WL 126085, at *14 (N.D. Ill. Jan. 14, 2014). Plaintiffs do not need to plead all of the elements of a contract if they can plead facts showing mutual assent to an agreement. *Id.*

Plaintiffs allege that Amazon agreed to pay Plaintiffs an hourly rate of pay for the time they worked at Amazon's facility. SAC ¶¶ 31, 101. Plaintiffs further allege that Amazon violated the agreement following the outbreak of the Coronavirus by preventing Plaintiffs from clocking in when they first arrived at Amazon's facility and instead required them to undergo a COVID-19 screenings prior to allowing them to clock in each day. SAC ¶¶ 33-34. As a result, Plaintiffs suffered a loss of the wages Amazon agreed to pay them. SAC ¶¶ 35-37, 112-114.

Plaintiffs seek their agreed upon regular straight time hourly rate of pay for all time they worked but were not paid. Their "specific" regular hourly rate of pay is the rate that the parties agreed that Plaintiffs would be paid for each hour worked. The amount Plaintiffs are owed for uncompensated work is then a function of simple mathematical calculation. Plaintiffs' Second

Amended Complaint is sufficient to put Amazon on notice that this is the basis for their IWPCA claim. ECF No. 16, Second Am. Compl. ¶¶ 47-56; Fed. R. Civ. P. 8.

Similar allegations have been held to be sufficient to state a claim under the IWPCA. In *Cates v. Alliance Coal, LLC,* the plaintiffs alleged that there was an agreed hourly rate of pay for the performance of their work and the plaintiffs were not paid for all hours worked at the agreed rates. *Cates v. All. Coal, LLC,* No. 21-CV-377-SMY, 2022 WL 4782857, at *5-6 (S.D. Ill. Oct. 3, 2022). The Court held this was sufficient to put the defendant on notice of the plaintiffs' claims and plausibly stated a claim under the IWPCA. *Id.*

Amazon contends that because it implemented a policy that deprived pay to employees for the time they spent in COVID-19 screenings, Plaintiffs' claim cannot survive. Mtn. to Dismiss at 19. This argument ignores Plaintiffs' allegations. Plaintiffs contend there *was* an agreement to pay them for all time they spent performing the duties and tasks Amazon directed them to perform, and Amazon violated that agreement by implementing a policy that deprived employees of pay for the time they spent undergoing COVID-19 screenings. SAC ¶¶ 110-114. Plaintiffs do not concede they mutually assented to Amazon's policy to deprive them of wages for the time they spent in COVID-19 screenings. In *Steger v. Life Time Fitness, Inc.*, 2015 WL 5307708, at *2 (N.D. Ill. Sept. 10, 2015), the court rejected similar arguments. The defendant argued it did not agree to pay for work performed off-the-clock, but the court rejected this argument when denying the defendant's motion to dismiss. *Id.* The court held the plaintiffs adequately alleged the defendant promised to pay them certain wages for every hour worked and failed to do so. *Id.* at *3.

In another decision denying a Rule 12(b)(6) motion to dismiss an IWPCA claim for allegedly failing to set forth the required "agreement or understanding," the court explained:

> Utilimap argues the plaintiffs have failed to allege facts showing they had "an employment contract or agreement" pursuant to which Utilimap owed them

> compensation, an essential element of an IWPCA claim. *See* 820 ILCS 115/2. However, in the Court's view, anything Utilimap is obligated to pay the plaintiffs by virtue of their work for Utilimap is "pursuant to an employment ... agreement." Regardless of whether an agreement to work is in writing or for a specific duration or terminable at will, it is still an agreement. The plaintiffs' complaint sufficiently alleges the existence of an employment agreement between Utilimap and the plaintiffs that essentially provides, "If you [the plaintiffs] work for me [Utilimap], I will pay you the wage I've offered you in accordance with the law." Utilimap assented to these terms by hiring the plaintiffs, and the plaintiffs assented by working. Thus, the complaint is not deficient for failing to allege an employment agreement (internal citations omitted).

*Martinez v. Utilimap Corp.,* No. 3:14-CV-310-JPG-DGW, 2014 WL 6751832, at *3 (S.D. Ill. Nov. 24, 2014).

Plaintiffs allege that Amazon deprived them of their earned regular wages by prohibiting them from clocking in until after they completed a COVID-19 screenings. SAC ¶¶ 33-34. Amazon disputes Plaintiffs' characterization of the agreement Amazon had with its workers, arguing that the agreement to pay an hourly wage did not cover the time employees spent in COVID-19 screenings. Plaintiffs disagree with that defense. At this stage, the Court is required to accept Plaintiffs' allegations as true, and whether Amazon can convince the Court that it was not required to pay for off-the-clock time, is a merits question not suitable to resolve at the motion to dismiss stage. *See Labriola v. Clinton Entertainment Management, LLC,* No. 15 C 4123, 2016 WL 1106862, at *4 (N.D. Ill. March 22, 2016) (affirmative defenses are not a basis for dismissal of the complaint under Rule 12(b)(6) and noting that the defendants will have the opportunity to raise defenses in their answer).

### E.     Plaintiffs Have Plausibly Alleged a Quantum Meruit Claim.

Amazon's motion conflates a quantum meruit claim with an unjust enrichment claim. Plaintiffs plead the former, and not the latter. SAC ¶¶ 125-134. To state a claim for quantum meruit, Plaintiffs must allege (1) its performance of a service for Defendant's benefit; (2) the

service was performed non-gratuitously; (3) Defendant accepted the service; and (4) no contract for payment existed between the parties.[15] *Mooney v. Wyndham Worldwide Operations, Inc.,* 2014 WL 2959270, at *4 (N.D. Ill. July 1, 2014). Plaintiffs plausibly allege these facts. Plaintiffs claim they were required to go through COVID-19 screenings each shift, Amazon benefited from the COVID-19 screenings, Amazon did not pay Plaintiffs for their time spent in the screenings, and that it would be unjust for Amazon to retain the benefit of the Plaintiffs' time without paying. SAC ¶¶ 125-126, 128-129. Plaintiffs also allege that Amazon shifted the considerable cost, responsibility, and risk to Plaintiffs by requiring the screenings, and Amazon knowingly received the service that Plaintiffs provided. SAC ¶ ¶130, 131. Additionally, Plaintiffs allege the quantum meruit claim in the alternative to the IWPCA claim, meaning, in the absence of the existence of a contract, plaintiffs should recover under the theory of quantum meruit. SAC ¶ 6. *See Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000) (Under federal pleading rules, plaintiffs may plead inconsistent claims in the alternative).

Amazon argues that because the challenged conduct – not paying employees for time spent in COVID-19 screenings – is common to the FLSA, IMWL claims and quantum meruit claim, they should all stand or fall together. Amazon is wrong for at least two reasons. *First*, its reliance on *Cleary v. Philip Morris Inc*., 656 F.3d 511, 517 (7th Cir. 2011) is misplaced because *Cleary* involves an unjust enrichment claim, not a quantum meruit claim. *Id.* As explained above, the two claims have different elements. They also provide for different remedies. In quantum meruit, the

---

[15] The different elements of an unjust enrichment claim are: (1) defendant received a benefit (2) to the detriment of plaintiff, and (3) it is against the fundamental principles of justice, equity, and good conscience for defendant to retain the benefit. *Mooney,* 2014 WL 2959270, at *3 (N.D. Ill. July 1, 2014), citing *Michael Reese Hosp. & Med. Ctr. v. Chi. HMO, Ltd.,* 554 N.E.2d 472, 474 (Ill.App.Ct.1990).

recovery is measured by the reasonable value of work provided. *Jameson Real Est., LLC v. Ahmed*, 2018 IL App (1st) 171534, ¶ 61, 129 N.E.3d 128, 143. In unjust enrichment claims, the recovery is measured by the benefit received and retained as a result of the benefit provided. *Id*.

*Second*, Plaintiffs' quantum meruit claim involves different conduct than the FLSA and IMWL claims. The FLSA and IMWL Classes are defined as persons who had to undergo COVID-19 screenings and who worked more than 40 hours in a week. SAC ¶¶ 76, 78. The Quantum Meruit Class is defined as "All current and former hourly paid employees of Amazon" who had to undergo COVID-19 screenings, which includes persons who worked less than 40 hours in individual workweeks. SAC ¶ 68. Thus, the claims are not co-extensive.

Because Plaintiffs have pleaded the elements of quantum meruit claim, Amazon's motion to dismiss Count IV should be denied.

## III.     CONCLUSION

For the reasons stated in this response, Plaintiffs have alleged sufficient facts to state claims for relief, and Amazon's Motion to Dismiss should be denied.

Dated: April 11, 2023                    Respectfully submitted,

*/s/Douglas M. Werman*

Douglas M. Werman- dwerman@flsalaw.com
Maureen A. Salas – msalas@flsalaw.com
**WERMAN SALAS P.C.**
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
Tel: (312) 419-1008

Don J. Foty- dfoty@hftrialfirm.com
**HODGES & FOTY, LLP**
Bar No. 24050022
2 Greenway Plaza, Suite 250
Houston, Texas 77046
Tel: (713) 523-0001