**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LISA JOHNSON AND GALE MILLER ANDERSON, on behalf of themselves and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>AMAZON.COM SERVICES, LLC,<br><br>    Defendant. | Case No. 1:23-cv-00685<br><br>Hon. Thomas M. Durkin |

**DEFENDANT AMAZON.COM SERVICES, LLC'S REPLY IN
<u>SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................................1

ARGUMENT ..............................................................................................................................2

I.    Plaintiffs' FLSA Claim Fails Because Pre-Shift COVID-19 Screenings Do Not Satisfy The "Integral and Indispensable" And "Primary Benefit" Tests. ............................2

      A.    Pre-Shift COVID-19 Screenings Are Not Integral And Indispensable.....................3

          1.    Plaintiffs Ignore The Controlling *Busk* Standard In Favor Of Distorted, Outdated, And Inapplicable Authority. ...........................................3

          2.    Plaintiffs' Fact Allegations Do Not Meet The *Busk* Standard. ......................5

          3.    Plaintiffs' Attempts To Change The Body Of Caselaw On COVID-19 Screening Claims Under The Portal-to-Portal Act Are Meritless................10

      B.    Pre-Shift COVID-19 Screenings Did Not Primarily Benefit Amazon....................12

II.    Plaintiffs' IMWL Claim Fails For The Same Reasons As Their FLSA Claim....................13

      A.    Neither *Mitchell* Nor Any Other IMWL Decision Supports Plaintiffs' Position. .......14

      B.    Illinois Is Unlike The States That Did Not Adopt The Portal-To-Portal Act...........17

III.    Plaintiffs Do Not Sufficiently Allege An Agreement For Their IWPCA Claim. .................19

IV.    Plaintiffs' Quantum Meruit Claim Fails Because It Is Derivative. .......................................20

CONCLUSION .........................................................................................................................20

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adair v. United States,*
    2021 WL 6163407 (Fed. Cl. Dec. 30, 2021) .......................................................................... 10

*Adegbite v. United States,*
    156 Fed. Cl. 495 (2021) ........................................................................................................ 10

*Alvarez v. United States,*
    2021 WL 6163405 (Fed. Cl. Dec. 30, 2021) .......................................................................... 10

*Amaya v. DGS Constr., LLC,*
    278 A.3d 1216 (Md. 2022) .................................................................................................... 17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ......................................................................................................... 5, 19

*Boone v. Amazon.com Servs., LLC,*
    562 F. Supp. 3d 1103 (E.D. Cal. 2022) ................................................................. 1, 5, 11, 12

*Buero v. Amazon.com Servs., Inc.,*
    521 P.3d 471 (Or. 2022) ........................................................................................................ 18

*Cates v. All. Coal, LLC,*
    2022 WL 4782857 (S.D. Ill. Oct. 3, 2022) ........................................................................... 19

*Chagoya v. City of Chicago,*
    992 F.3d 607 (7th Cir. 2021) ................................................................................. 3, 6, 16, 19, 20

*Cleary v. Philip Morris,*
    656 F.3d 511, 517 (7th Cir. 2011) ........................................................................................ 20

*Condo v. Sysco Corp.,*
    1 F.3d 599 (7th Cir. 1993) .................................................................................................... 16

*Frlekin v. Apple Inc.,*
    457 P.3d 526 (Cal. 2020) ...................................................................................................... 18

*Haro v. Walmart, Inc.,*
    2023 WL 2239333 (E.D. Cal. Feb. 27, 2023) ....................................................................... 11

*Harwell-Payne v. Cudahy Place Senior Living LLC,*
    2022 WL 6195619 (E.D. Wis. Sept. 30, 2022) .................................................................. 9, 11

*Hayes Mech., Inc. v. First Indus., L.P.,*
    812 N.E.2d 419 (Ill. App. 2004) .......................................................................................... 20

*IBP, Inc. v. Alvarez*,
    546 U.S. 21 (2005) .................................................................................................. 8

*In re Amazon.com, Inc.*,
    255 A.3d 191 (Pa. 2021) ....................................................................................... 17

*In re Amazon.com, Inc.*,
    852 F.3d 601 (6th Cir. 2017) ................................................................................ 18

*Integrity Staffing Sols., Inc. v. Busk*,
    574 U.S. 27 (2014) ..........................................................................................*passim*

*Kerbes v. Raceway Assoc., LLC*,
    961 N.E.2d 865 (Ill. App. Ct. 2011)................................................................. 17, 18

*Lewis v. Giordano's Enters., Inc.*,
    921 N.E.2d 740 (Ill. App. Ct. 2009)....................................................................... 18

*Marcatante v. City of Chicago*,
    657 F.3d 433 (7th Cir. 2011)................................................................................. 20

*Medrano v. U.S.*,
    159 Fed. Cl. 537 (2022) ......................................................................................... 5

*Mitchell v. JCG Indust., Inc.*,
    745 F.3d 837 (7th Cir. 2014) ............................................................................*passim*

*Pipich v. O'Reilly Auto Enterps.*,
    2022 WL 788671 (S.D. Cal. 2022) ....................................................................... 10

*Roberts v. State*,
    512 P.3d 1007 (Ariz. 2022) ................................................................................... 17

*Sehie v. City of Aurora*,
    432 F.3d 749 (7th Cir. 2005)............................................................................... 4, 13

*Steger v. Life Time Fitness, Inc.*,
    2015 WL 5307708 (N.D. Ill. Sept. 10, 2015)....................................................... 19

*Steiner v. Mitchell*,
    350 U.S. 247 (1956) .......................................................................................*passim*

*Thomas v. Amazon.com Servs., Inc.*,
    462 F. Supp. 3d 828 (N.D. Ohio 2020) ................................................................. 18

*Vaccaro v. Amazon.com.dedc, LLC*,
    2021 WL 1022699 (D.N.J. Mar. 17, 2021) ...................................................... 11, 12

**Statutes**

29 U.S.C. § 201 *et seq.* ....................................................................................................*passim*

29 U.S.C. § 203(o) ....................................................................................................... 14

820 ILCS 105/3 ....................................................................................................... 14, 15

820 ILCS 105/4a ....................................................................................................... 14

820 ILCS 105/12(a) ....................................................................................................... 16

O.R.C. § 4111.03(A) ....................................................................................................... 18

**Other Authorities**

56 Ill. Admin. Code § 210.110 ....................................................................................... 14, 15, 16

56 Ill. Admin. Code § 210.120 ....................................................................................... 15, 17, 18

79th Ill. Gen. Assemb., H.R., Trans. of June 16, 1976 ............................................... 17

## INTRODUCTION

In their Opposition, Dkt. 25 ("Opp."), Plaintiffs offer a hodgepodge of arguments to stave off dismissal of their FLSA, IMWL, IWPCA, and quantum meruit claims based on pre-shift COVID-19 screening. None has merit.

Plaintiffs dedicate the majority of their brief to Amazon's "integral and indispensable" argument under the Portal-to-Portal Act, as that is the most obvious basis for dismissal of their FLSA claim (and, as a result, their IMWL claim). *Id.* at 2-15. Through misleading citations and manipulated quotes, Plaintiffs suggest that this argument has been "rejected by *every* court to have considered" it. *Id.* at 1 (emphasis in original). To the contrary, only *one* court has sided with Plaintiffs on this issue. *Every other court* has agreed with Amazon that pre-shift COVID-19 screening is not compensable under the Supreme Court's decision in *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27 (2014), because screening lacks sufficient closeness to employees' specific job duties (unless the employees work in healthcare, which Plaintiffs did not). As detailed in Amazon's opening brief, the outlier, *Boone v. Amazon.com Servs.*, 562 F. Supp. 3d 1103 (E.D. Cal. 2022), reached the opposite result because it did not apply the controlling standard under *Busk*. Dkt. 22 ("MTD") at 9-11. Tellingly, Plaintiffs offer no real defense of *Boone* in response. Instead, they double down on its error and regurgitate at length more lenient "integral and indispensable" standards that *Busk* expressly overruled.

Next, in response to Amazon's alternative "primary benefit" argument, Plaintiffs wrongly claim Amazon argues it did not benefit from screenings. Opp. at 14. In actuality, Amazon's point is that it did not benefit from screenings *more* than Plaintiffs did, considering that Plaintiffs stress COVID-19 could cause them serious physical harm and death.

Turning to their IMWL claim, Plaintiffs claim the Seventh Circuit held the Portal-to-Portal Act does not apply to the IMWL in *Mitchell v. JCG Indust., Inc.,* 745 F.3d 837 (7th Cir. 2014).

That is simply false, as evidenced by the text of *Mitchell* itself and the numerous decisions applying the Portal-to-Portal Act to IMWL claims after *Mitchell*, including one from the Seventh Circuit itself. Worse, *Mitchell* rejects the core of Plaintiffs' argument here: absent an express incorporation, federal standards cannot apply to the IMWL. That is because Illinois has always looked to federal standards for guidance on how to apply the IMWL, as *Mitchell* notes.

Plaintiffs' IWPCA arguments fare no better. Plaintiffs recognize that they must plausibly plead the existence of an agreement to pay them wages for time spent in screening. Opp. at 24. They maintain it is enough to generically allege that Amazon agreed to pay them an "hourly rate" for work, but the great weight of IWPCA caselaw, including Seventh Circuit law, says otherwise.

Finally, Plaintiffs insist their quantum meruit claim is viable on its own, even when the associated FLSA and IMWL claims fail, because it is based on different "conduct." Opp. at 28. Their own pleadings say the opposite. *See* SAC ¶¶ 25, 125. Because Plaintiffs are not entitled to wages for COVID-19 screening time under the FLSA or IMWL, they cannot show any "work" of value that could be recovered under a quantum meruit theory. Opp. at 27-28.

For these reasons, and those discussed in the opening brief, Plaintiffs' Second Amended Complaint should be dismissed with prejudice.

## ARGUMENT

**I.** **Plaintiffs' FLSA Claim Fails Because Pre-Shift COVID-19 Screenings Do Not Satisfy The "Integral and Indispensable" And "Primary Benefit" Tests.**

In the opening brief, Amazon explained that Plaintiffs' FLSA claim (Count III) fails "for two independent reasons." MTD at 4. The first is that time spent in COVID-19 screening does not satisfy the "integral and indispensable" test under the Portal-to-Portal Act amendment to the FLSA. *Id.* The second reason is that the screening time also does not satisfy the more general "primary benefit" test under the FLSA. *Id.* If COVID-19 screening time fails just one of these

tests, Plaintiffs' FLSA claim must be dismissed.  It fails both tests.  *Id.* at 4-13.

A.    **Pre-Shift COVID-19 Screenings Are Not Integral And Indispensable.**

1.    **Plaintiffs Ignore The Controlling *Busk* Standard In Favor Of Distorted, Outdated, And Inapplicable Authority.**

The Supreme Court's test in *Busk* controls the "integral and indispensable" analysis for Count III.  MTD at 4-11; *Chagoya v. City of Chicago*, 992 F.3d 607, 616-20 (7th Cir. 2021) (affirming *Busk* applies in this jurisdiction to FLSA claims seeking wages for pre- or post-shift activities).  The *Busk* test is a big problem for Plaintiffs, as Amazon previously explained.  *See* MTD at 4-11; *infra* at 5-8.  Plaintiffs resort to a slew of tactics to get around *Busk*, to no avail.

The first tactic is to minimize and "distinguish" *Busk* and *Chagoya*.  Tellingly, Plaintiffs wait until five pages into their integral and indispensable argument to mention *Busk* (in just one paragraph) and *Chagoya* (in just one footnote).  Opp. at 6-7, n.2.  Even then, Plaintiffs do not address either precedent in a meaningful way.  They summarily dismiss both as "not relevant" just because the *facts* of each case did not concern pre-shift COVID-19 screening.  *Id.*  But that ducks the point that matters: the *legal test* established in *Busk* and reaffirmed in *Chagoya* controls whether Plaintiffs are entitled to wages for their pre-shift activities.

The second tactic is to misrepresent certain statements from the Supreme Court or the U.S. Department of Labor ("DOL") as categorical compensation rules for pre- or post-shift time.  Take, for example, Plaintiffs' claim that "[t]he Supreme Court has stated that activities performed by an employee 'before or after the regular work shift' ***are*** 'an integral and indispensable part of the principal activities' of the employee and must be compensated."  Opp. at 2 (emphasis added) (citing *Steiner v. Mitchell*, 350 U.S. 247 (1956)).  In fact, Plaintiffs have omitted critical words from this holding, as the full quote from *Steiner* shows: "activities performed either before or after the regular work shift, on or off the production line, are compensable under the [Portal-to-Portal

Act] *if those activities* are an integral and indispensable part of the principal activities." 350 U.S. at 256 (emphasis added). Thus, *Steiner's* actual holding is consistent with the *Busk* test, as the Supreme Court pointed out. 574 U.S. at 34.

Similarly, Plaintiffs provide a very selective quote of a DOL publication to suggest the DOL's position is that every employee must be paid wages for time spent in COVID-19 screening. Opp. at 12. If true, this would be inconsistent with the individualized, duty-specific *Busk* test. But when read in full, the DOL publication makes clear that whether such time is compensable depends on the employee's principal duties:

> *It depends, under the FLSA,* your employer is required to pay you for all hours that you work, including for time before you begin your normal working hours if the task that you are required to perform is necessary for the work you do. For many employees, undergoing a temperature check before they begin work must be paid because it is necessary for their jobs. *For example, if a nurse who performs direct patient care services at a hospital is required to check her temperature upon arrival at the hospital before her shift, the time that she spends checking her temperature upon entry to the worksite is likely compensable because such a task is necessary for her to safely and effectively perform her job during the pandemic. In other words, the temperature check is integral and indispensable to the nurse's job.*

Dkt. 25-2 (Opp. Ex. 2), at 4 (emphasis added to the portions omitted from Plaintiffs' brief).

The third tactic is to cite outdated and out-of-Circuit authority. Plaintiffs cite to five DOL letters—all pre-dating *Busk*—opining that pre-shift time spent in medical examinations is compensable under the FLSA if the employer "required" it. Opp. at 9. But that is exactly the incorrect legal conclusion that caused the Supreme Court to grant certiorari in *Busk*. 574 U.S. at 36 ("The Court of Appeals erred by focusing on whether an employer *required* a particular activity.") (emphasis in original).[1]

Likewise, Plaintiffs cling to two out-of-Circuit decisions that post-date *Busk*, but do not

---

[1] Right after these letters, Plaintiffs discuss *Sehie v. City of Aurora*, 432 F.3d 749 (7th Cir. 2005). Opp. at 10-11. But *Sehie* does not address the integral and indispensable test at all. *See infra* at 13, n.9.

apply the two distinct prongs of the *Busk* test. Opp. at 7-8, 16. The first of these decisions, *Aguilar v. Mgmt. & Training Corp.*, concluded that pre-shift activities are compensable under *Busk* if they are in some way "tied to" an employee's particular job duties. 948 F.3d 1270, 1278 (10th Cir. 2020). But that short phrase is not the actual, two-pronged test detailed in *Busk*. *Compare Busk*, 574 U.S. at 33-34 (detailing the test) *with id.* at 36 (summarizing the test using that phrase).[2] The second of these decisions is *Boone*. Amazon addressed *Boone* at length in the opening brief, explaining that it wrongly asserted the Ninth Circuit uses a standard "more lenient" than *Busk* and, as a result, failed to undertake the distinct "integral" analysis required by *Busk*. MTD at 9-11. Plaintiffs concede these points by failing to provide any meaningful response. *See* Opp. at 16 (stating only that Amazon's arguments on *Boone* "fall flat" and are not "valid," without any developed argument). Thus, there is no reason to adopt *Boone*'s improper analysis here.

Plaintiffs' fourth, and final, tactic for avoiding *Busk* is to block-quote the "integral and indispensable" legal conclusions set forth in the SAC, label them as "facts," and insist the Court must accept them as "true" for now. Opp. at 4-5. That is not how Rule 12(b)(6) works. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"). All that matters are the facts alleged. As explained in the opening brief, and below, the few facts alleged here do not satisfy *Busk*.

## 2. Plaintiffs' Fact Allegations Do Not Meet The *Busk* Standard.

Plaintiffs dedicate so much effort to avoiding *Busk* because that test makes it difficult for employees to demonstrate they should be paid wages for pre-shift activities. That is by design: the whole point of the Portal-to-Portal Act was to clarify that such activities are generally *not*

---

[2] *See also Medrano v. U.S.*, 159 Fed. Cl. 537, 547-48 (2022) (explaining in greater detail why *Aguilar*'s reading of *Busk* is "mistaken" and, as a result, "is against the weight" of post-*Busk* caselaw). *See also infra* 7-8 (explaining why *Aguilar* is distinguishable on the facts in any event).

compensable under the FLSA. *Busk*, 574 U.S. at 31-33. So, *Busk* likewise clarifies the "integral and indispensable" exception to that rule is very narrow: a pre-shift activity is compensable only if it (i) is an "intrinsic element" of an employee's principal activities (*integral*), and (ii) "cannot be dispensed with" if the employee is to perform her principal activities (*indispensable*). *Id.* at 33.

The majority of Plaintiffs' 11-page integral and indispensable argument does not even try to address these two distinct prongs. Look at the way Plaintiffs describe their position at the outset:

> Here, the COVID-19 screenings are compensable because they (1) were required by Amazon each shift, (2) Amazon employees were required to pass the screening as a condition to work each day, and (3) the screenings were designed so that Amazon employees could perform their work each day[.]

Opp. at 3. The first two points are irrelevant under *Busk*. 574 U.S. at 36 (it is an error to focus on "whether an employer *required* a particular activity" because that "would sweep in . . . the very activities the Portal-to-Portal Act was designed to address") (emphasis in original).[3] The third point is too generic and not keyed to Plaintiffs' specific principal activities: "moving boxes, stacking packages, and loading boxes." SAC ¶¶ 27, 29; *see also infra* at 7-8. Also irrelevant is Plaintiffs' other argument that screenings were integral and indispensable because they allegedly "increase[d] the efficiency of Amazon's operations." Opp. at 3; *Chagoya*, 992 F.3d at 621-23 (whether a pre-shift activity promotes "greater efficiency" does not matter under *Busk*).

Once the brush is cleared of these digressions, there is only one relevant argument Plaintiffs put forth for the Court to consider: COVID-19 screening is integral and indispensable because Plaintiffs could not perform any work at all "if they were infected with the virus." Opp. at 5-6, 8-9, 12. The problem with this argument is that it focuses on the indirect relationship between screening and Plaintiffs' ability to work as a *general matter*. *See* Opp. at 5 (arguing screening is

---

[3] *See also* Opp. at 9 (arguing that COVID-19 screening is different from other health-related—but non-compensable—activities like eating and sleeping because it was "a requirement" from Amazon).

"integral" just because Plaintiffs generally "could not perform their work for Amazon if they were infected with the virus"); *id.* at 5-6 (arguing screening is "indispensable" for exactly the same reason). *Busk* makes clear the focus must be on the relationship between screening and the specific "principal activities that [Plaintiffs were] employed to perform." 574 U.S. at 33. Nowhere in the SAC or the Opposition do Plaintiffs even try to articulate how COVID-19 screening is an *intrinsic* part of handling boxes. Nor do Plaintiffs explain how it would be *impossible* to handle boxes without first being screened. They do not, for example, allege that because COVID-19 remains an active virus to this day, Amazon still maintains the screening practice. *See* SAC (all allegations regarding the screening practice are in the past tense). Plaintiffs also do not allege that Amazon employees suddenly stopped being able to move, stack, and load boxes once Amazon phased out the screening practice. Those would be the kind of allegations demonstrating that screening is indispensable, but they are absent here (because they would be untrue).

Plaintiffs stress that screening ensured their "overall safety," and that safety was necessary to perform their box-handling duties. Opp. at 3-6 (citing SAC ¶¶ 47-51). But every job demands "overall safety," and countless pre- and post-shift activities help ensure that. This line of reasoning is endless and would "sweep into 'principal activities' the very activities that the Portal-to-Portal Act was designed to address." *Busk* said so directly. 574 U.S. at 35-36 (drawing "no distinction between searches *conducted for the safety of the employees* and those conducted for the purpose of preventing theft—neither were compensable under the Portal-to-Portal Act") (emphasis added).

The cases Plaintiffs think stand for the principle that pre-shift activities are necessarily integral and indispensable if they concern safety do not draw that conclusion, which would be inconsistent with *Busk*. Instead, those cases reaffirm that such activities are integral and indispensable only if there is a close nexus between those activities and the employees' particular

job duties, which is consistent with *Busk*. Take *Aguilar*, where the pre-shift activity was a "security screening" for "contraband" carried by detention officers whose principal activities were "providing security" and "searching for contraband" in a prison. 948 F.3d at 1277. Plaintiffs reason *Aguilar* is like their case because contraband could "impair" safety in a prison just like COVID-19 could "impair" safety in a warehouse. Opp. at 8. But that is the kind of logic the Tenth Circuit made clear it was rejecting. *Aguilar*, 948 F.3d at 1278 ("Standing on its own, an employer's general desire to keep its employees safe has no clear or obvious connection to the particular activities those employees are employed to perform."). Instead, "what matters" is that the pre-shift activity and the principal activities were effectively the same. *Id.* So even putting aside that *Aguilar* articulated the wrong test under *Busk*, *supra* at 4-5, that decision still does not help Plaintiffs. Their principal activities were handling boxes, not screening others for COVID-19.

As for *Steiner*, Amazon explained in the opening brief why it is distinguishable and even put the key point in italics to make it obvious. MTD at 10-11. Because Plaintiffs misstate Amazon's position by deleting that point, Opp. at 6, Amazon will make it again: in *Steiner*, the post-shift activity was "changing clothes and showering" to remove toxic battery chemicals from employees whose principal activity was making batteries ***using those chemicals***. 350 U.S. at 249. Thus, the removal of the toxic chemicals was an intrinsic part of using those chemicals, and it was indispensable because of "the important health and safety risks ***associated with the production of batteries***." *IBP, Inc. v. Alvarez,* 546 U.S. 21, 29 (2005) (recapping *Steiner*) (emphasis added). Plaintiffs tried to excise this detail because there is nothing similar here. Their job duties did not involve handling the COVID-19 virus, COVID-19 vaccines, or anything of the sort. *Steiner*'s holding was tethered to its facts. 350 U.S. at 256 ("it would be difficult to conjure up an instance where [the post-shift activities] are more clearly an integral and indispensable part of the principal

activity of the employment *than in the case of these employees*.") (emphasis added).

The same is true with *Harwell-Payne v. Cudahy Place Senior Living LLC*, 2022 WL 6195619 (E.D. Wis. Sept. 30, 2022). *See* Opp. at 14 (citing this case, but with no mention of the facts or reasoning). The plaintiff there provided "direct patient contact while administering medications" in a medical facility. In other words, her job was to maintain the health of others, which makes the connection to COVID-19 screening obvious. The court distinguished those healthcare duties from the kind of duties that lack a sufficient connection to COVID-19 screening, including the specific duties at issue here. *Harwell-Payne*, 2022 WL 6195619, at *7 ("The plaintiff in this case did not deliver auto parts, stock shelves or *unload packages*") (emphasis added).

As explained in the opening brief, Plaintiffs' case is just like the "rocket-powder plant" case discussed in *Busk*. MTD at 10-11. Plaintiffs resist this, claiming the pre-shift screening in the rocket-powder plant for "spark producing devices" had "nothing to do with the workers' ability to physically perform their work." Opp. at 12. That is incorrect: it had "a direct bearing on the safety of employees." *Busk*, 574 U.S. at 35. Bringing a spark into a rocket-powder plant could cause a mass explosion and hurt employees, just like bringing "the virus into the Amazon facilities [could] caus[e] a mass breakout" and hurt employees, as Plaintiffs allege. SAC ¶ 48. In both cases, though, the screenings are not integral and indispensable. *Busk*, 574 U.S. at 35. That is because there is a clear difference between the pre-shift activity (screening for sparks, screening for health) and the principal activity (making rocket powder, handling boxes). By contrast, in *Aguilar*, *Steiner*, and *Harwell-Payne*, the pre-shift activity and the principal activity involved the *same thing* (searching for contraband, handling battery chemicals, and ensuring health).

In sum, the only argument Plaintiffs raise under the controlling *Busk* test fails, which confirms that the Court should dismiss their FLSA claim.

**3.   Plaintiffs' Attempts To Change The Body Of Caselaw On COVID-19 Screening Claims Under The Portal-to-Portal Act Are Meritless.**

Other courts have evaluated COVID-19 screening claims under the *Busk* test, and the vast majority of them have dismissed the claims at the pleadings stage.  *See* MTD at 8-9.  Plaintiffs try to remake the state of the law in two ways, but neither works.

Plaintiffs first seek to avoid cases dismissing identical COVID-19 screening claims by injecting "facts" of their own creation.  They say their case is unlike *Pipich v. O'Reilly Auto Enterps.*, 2022 WL 788671 (S.D. Cal. 2022), because they worked in Amazon distribution centers "that have hundreds of employees," whereas the *Pipich* "plaintiff's job was different."  Opp. at 15, n.7.  But that is false: the *Pipich* plaintiff worked in a distribution center for an employer who "employs *thousands* of individuals at distribution centers."  2022 WL 788671, at *1 (emphasis added).  Plaintiffs also say that the plaintiffs in *Adegbite v. United States*, 156 Fed. Cl. 495 (2021), "abandoned their claims for compensation for COVID-19 screenings."  Opp. at 15.  But that is also false: the *Adegbite* plaintiffs raised the claim, the defendant moved to dismiss, and the court ruled on the merits that "time spent passing through the COVID-19 screening . . . is non-compensable" under *Busk*.  156 Fed. Cl. at 506.[4]  Finally, while Plaintiffs are correct that the plaintiff in *Perez v. Wal-Mart, Inc.* raised an unjust enrichment claim instead of an FLSA claim, they leave out why that distinction is irrelevant.  Opp. at 15.  The *Perez* plaintiff still argued that COVID-19 screening was "integral and indispensable" to her job duty, so the court evaluated and rejected that argument under *Busk*.  2021 WL 5741484, at *3-4 (W.D. Mo. Oct. 25, 2021).

Plaintiffs' other strategy is to imply that other courts have rejected Amazon's arguments

---

[4] Likewise, *Adair* and *Alvarez* dismissed COVID-19 screening claims on the merits under *Busk*, even though those plaintiffs opted not to oppose motions to dismiss, likely because of the well-reasoned *Adegbite* decision from the same court.  *Adair v. United States*, 2021 WL 6163407, at *5, n.2 (Fed. Cl. Dec. 30, 2021); *Alvarez v. United States*, 2021 WL 6163405, at *4, n.2 (Fed. Cl. Dec. 30, 2021).

10

"regarding the FLSA compensability of COVID-19 screenings" under *Busk*. Opp. at 14-15; *see also id.* at 1 (similar statement). But only one court has so held—*Boone*—and that was wrongly decided as Amazon has explained at length. *See* MTD at 9-11; *supra* at 5. The other cases Plaintiffs cite have nothing to do with Amazon's arguments under *Busk*. *Harwell-Payne*, as discussed, did not consider Amazon's arguments, which turn on Plaintiffs' box-handling duties, because the plaintiff in that case had very different patient-care duties. *Supra* at 8-9. *Haro v. Walmart, Inc.*, 2023 WL 2239333 (E.D. Cal. Feb. 27, 2023), did not address the *Busk* test at all; it just recommended conditional certification of an FLSA collective alleging a COVID-19 screening claim.[5] Indeed, the *Haro* defendant never filed a Rule 12(b)(6) motion challenging the allegations in that case. *See* Case No. 1:21-cv-00239 (E.D. Cal.). The final two decisions Plaintiffs cite, *Vaccaro* and *Malloy*, evaluated COVID-19 screening claims under state laws that have not adopted the Portal-to-Portal Act, and thus the *Busk* standard. *See Vaccaro v. Amazon.com.dedc, LLC*, 2021 WL 1022699, at *4 (D.N.J. Mar. 17, 2021) ("the Portal-to-Portal Act's exclusion does not apply" to a New Jersey state law claim); *Malloy v. Amazon.com Servs., LLC*, Dkt. 25-1 (Opp. Ex. 1), at 56:22-24 ("I also find that I don't need to address the integral and indispensable aspect" for a Nevada state-law claim).[6]

In sum, (i) the Court must apply the two-part *Busk* test to Plaintiffs' FLSA claim, (ii) Plaintiffs' allegations do not satisfy the *Busk* test, and (iii) the majority of caselaw dismisses identical COVID-19 screening claims for failing that test. This is reason enough to dismiss Count

---

[5] Plaintiffs also incorrectly state the Findings and Recommendation in *Haro* "grant[ed]" conditional certification. Opp. at 15.

[6] To be sure, *Vaccaro* uses a state-law primary benefit test that is similar to the FLSA primary benefit test. *See infra* at 12. But Plaintiffs never make that clarification, implying instead that that *Vaccaro* rejected Amazon's arguments under the integral and indispensable test. Opp. at 14. The citation to *Malloy* is even more misleading because that decision did not turn on a state-law equivalent to *either* test. *Infra* at 12, n.8.

III with prejudice.[7]

**B.      Pre-Shift COVID-19 Screenings Did Not Primarily Benefit Amazon.**

Another independent basis for dismissing Plaintiffs' FLSA claims is that their allegations fail to demonstrate the COVID-19 screenings were *primarily* for the benefit of Amazon, rather than them.  *See* MTD at 11-13.  Instead of addressing Amazon's argument head-on, Plaintiffs erect a strawman.  *See* Opp. at 14 ("It is unclear why Amazon has even argued that the COVID-19 screenings were not for Amazon's benefit").  In fact, however, Amazon has taken as true Plaintiffs' allegations that Amazon benefitted from screening because it helped Plaintiffs remain free of COVID-19 and to continue to work for Amazon.  *See* MTD at 12.  But Plaintiffs also concede, as they must, that they benefitted from screening as well.  SAC ¶¶ 25, 47-48; *see also* Opp. at 3-4 (screenings "were for the safety of the workers and their families," and without them "Plaintiffs and the Class Members (and their families) would get sick").  Thus, the pertinent question is whether Amazon benefitted from Plaintiffs remaining free of COVID-19 *more* than Plaintiffs themselves did.

Plaintiffs identify two out-of-circuit decisions holding the answer is yes.  Opp. at 13.[8]  One problem with both decisions (and Plaintiffs' argument) is the assumption that avoidance of a non-specific economic harm is necessarily more beneficial than avoidance of a known threat to human life.  *See* SAC ¶ 54 (speculating that if an "outbreak" occurred, that could cause Amazon to lose unspecified "profits"); *Boone*, 562 F. Supp. 3d at 1117; *Vaccaro*, 2021 WL 1022699, at *4.  That is hard to square with Plaintiffs' insistence that the symptoms of COVID-19 are serious, SAC ¶ 48,

---

[7] If the SAC is construed as raising a separate claim for wages for pre-shift time spent walking from the screening area to the time clocks, then that claim fails for the same reasons.  *See* MTD at 11, n.8; Opp. at 16, n.8 (both parties agree that such a claim for walk time fails if the predicate screening claim fails).

[8] Plaintiffs actually point to three, but one of them does not make any clear ruling on the primary benefit, instead focusing on the allegation that Nevada required employers to institute some form of COVID-19 precautions.  *See Malloy*, Dkt. 25-1, at 56:1-21.  No comparable Illinois requirement is alleged here.

and have caused over one million Americans to die, *id.* ¶ 25. This is why another court came to the more reasonable conclusion that employers and employees *equally* benefitted from employees remaining free of COVID-19. *Perez*, 2021 WL 5741484, at *3. The Court should come to a similar conclusion and find that Plaintiffs' allegations do not demonstrate Amazon *primarily* benefitted from COVID-19 screening, which would be a separate basis for dismissing Count III with prejudice.[9]

## II. Plaintiffs' IMWL Claim Fails For The Same Reasons As Their FLSA Claim.

In the opening brief, Amazon argued that Plaintiffs' IMWL overtime claim (Count I) fails along with their FLSA overtime claim because both claims are based on the same fact allegations and legal standards. MTD at 13-16. On the law, Amazon explained that (i) the IMWL's overtime requirement is a word-for-word copy of the FLSA overtime requirement; (ii) the express intent of the IMWL was to make Illinois "even with" the FLSA; (iii) Illinois appellate courts have repeatedly affirmed their practice of reading the IMWL "in conformity with the FLSA;" (iv) the Seventh Circuit has repeatedly affirmed that the FLSA and IMWL are coextensive, and (v) an IMWL regulation refers to "regulations and interpretations" of the FLSA, as amended by the Portal-to-Portal Act, for "guidance" in interpreting the IMWL. *Id.* at 13-15 (citations omitted). Amazon then identified **ten** decisions applying the Portal-to-Portal Act to IMWL claims. *Id.* at 15-16.

Plaintiffs respond by disputing that those ten decisions were correct on the law; they believe the Portal-to-Portal Act does not apply under the IMWL.[10] Opp. at 23-24. Their primary

---

[9] Plaintiffs also cite *Steiner* and *Sehie* as somehow supporting their primary benefit argument. Opp. at 12-13. *Steiner* does not address the primary benefit test at all. 350 U.S. 247. *Sehie* is a "very fact-specific" case in which an employer made an emergency dispatcher see a therapist. 432 F.3d at 752. The Seventh Circuit said not to stretch its holding beyond those facts: "By no means does our ruling mean that every time an employer gets help for its employees, the employee must be compensated for hours worked." *Id.*

[10] Yet Plaintiffs do not contest that the FLSA's primary benefit rule applies under the IMWL.

support for this view is *Mitchell,* 745 F.3d 837, which they say holds "that the IMWL does not incorporate the Portal exclusions." Opp. at 23. Plaintiffs also argue this Court can consider only one IMWL regulation—56 Ill. Admin. Code § 210.110, defining "hours worked"—and nothing else when deciding IMWL claims. Opp. at 17-19. Finally, Plaintiffs note a few other states have decided not to incorporate the Portal-to-Portal Act under their overtime laws and conclude Illinois must have done the same. These arguments fail.

### A.    Neither *Mitchell* Nor Any Other IMWL Decision Supports Plaintiffs' Position.

First things first: Plaintiffs' primary IMWL argument is based on another misrepresentation of law. The Seventh Circuit in *Mitchell* did *not* hold "that Illinois law [does not] incorporate the provisions of the federal Portal-to-Portal Act." Opp. at 23.

In *Mitchell*, the issue was whether poultry plant workers were required to be paid under the FLSA and the IMWL for time spent during their lunch breaks removing and putting back on "sanitary gear." 745 F.3d at 838-39. The Court ultimately concluded the result was the same under both laws: the workers were not entitled to wages for that time. As to the FLSA claim, the Court first applied a provision of the statute, 29 U.S.C. § 203(o), which excludes from compensation certain "time spent in changing clothes" if that is consistent with the applicable "collective bargaining agreement." 745 F.3d at 839-41. Next, and in the alternative, the Court applied an FLSA limiting principle, the *de minimis* rule, and found that the time at issue was too "minimal" to require compensation. *Id.* at 841-43.

Turning to the IMWL claim, the Court first acknowledged the text of the IMWL contains no express "counterpart to section 203(o)" of the FLSA. *Id.* at 844. These are the select few words Plaintiffs pounce on as the purported "holding" of *Mitchell*. *See* Opp. at 21. But they omit what the Seventh Circuit said next: "to dwell on these differences is to miss" the point. *Mitchell,* 745 F.3d at 844. That is because the text of the IMWL is silent on what constitutes the "hours" that

14

must be paid with overtime.  *See* 820 ILCS 105/3, 105/4a.  For that reason, Illinois courts do not find it meaningful if the IMWL does not say directly that a particular activity is excluded from compensable time.  *Mitchell*, 745 F.3d at 845-46.  To the contrary, it is precisely because of the IMWL's silence on the scope of compensable time—as well as the legislative history showing that the IMWL sought to follow the FLSA—that "Illinois courts frequently say that they look to the [FLSA] for guidance."  *Id.* (collecting cases).

The Court also acknowledged that one IMWL regulation defines compensable "hours worked" in a "broad" way: "all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer."  *Id.* at 844 (citing 56 Ill. Admin. Code § 210.110).  The Court further recognized that, "standing alone," this definition of "hours worked" would encompass the gear-changing time at issue in that case.  *Id.*  This kind of "standing alone" approach is exactly what Plaintiffs say must control here.  *See* Opp. at 18 (the "definition of 'hours worked' in the IDOL regulation ends the legal analysis required to resolve Plaintiffs' IMWL claim").  And it is the same approach the *Mitchell* dissent thought should control.  *See* 745 F.3d at 852 (because the "hours worked" regulation does not expressly include the limitations on compensable time in the Portal-to-Portal Act, it must be the case that the IMWL rejects the Portal-to-Portal Act).

But the *Mitchell* majority squarely rejected that approach because "there is more" to the analysis than just those "hours worked" words in a vacuum.  *Id.* at 844.  For one thing, that definition "is worded almost identically" to the same definition in federal regulations.  *Id.*  For another, a different IMWL regulation says that all "regulations and interpretations" of the FLSA, as amended by the Portal-to-Portal Act, provide "guidance" in interpreting the IMWL, consistent with the longstanding practice of Illinois courts.  *Id.* at 845-46 (citing 56 Ill. Admin. Code

15

§ 210.120). For these reasons, it would be odd to find there is no "convergence of federal and state law in regard to the scope of exemptions from mandatory provisions of those different bodies of law when both are applicable to the same workforce." *Id.* at 845-46.[11] Accordingly, the Court applied the federal *de minimis* rule to reject the IMWL claim, even though the *de minimis* rule is not explicit in the IMWL, the "hours worked" regulation, or any other IMWL regulation. *Id.*

As this demonstrates, Plaintiffs have *Mitchell* entirely backwards. It is not just that Plaintiffs swap the dissent's opinion for the majority's holding (although that is bad enough). It is also that Plaintiffs overlook that the majority's reasoning for using the FLSA's *de minimis* rule under the IMWL applies with full force to the FLSA's Portal-to-Portal rule.

That is precisely why **ten** courts have applied the Portal-to-Portal Act to IMWL claims. *See* MTD at 15-16 & n.12. Four have done so after *Mitchell*, which is further proof that Plaintiffs misrepresent the *Mitchell* holding. In the face of this authority, Plaintiffs can only muster that these courts did not embark on a lengthy analysis of whether the Portal-to-Portal Act applies to the IMWL. Opp. at 23. But that only demonstrates this is a settled issue. Plaintiffs are also forced to admit the Seventh Circuit itself applied the Portal-to-Portal Act to an IMWL claim post-*Mitchell*, in *Chagoya*, 992 F.3d at 615. *See* Opp. at 24. Plaintiffs attempt to "distinguish" *Chagoya* on the basis that those plaintiffs did not contest the Portal-to-Portal Act's application. That does not help them. The Seventh Circuit would not apply an incorrect legal standard to a claim just because litigants agreed on it.[12] If anything, that other plaintiffs are not contesting the application of the

---

[11] Consider the implications of reading the "hours worked" regulation in the way Plaintiffs advocate. As just one example, many employers have a parking lot "on [their] premises." 56 Ill. Admin. Code § 210.110. Most employees are necessarily "required" to walk from their parked cars to their desks or workstations. *Id.* Under Plaintiffs' view, the regulation requires wages for parking-lot time. That would be a dramatic departure from the FLSA and impose on Illinois employers different tiers of wage-and-hour compliance. *Condo v. Sysco Corp.*, 1 F.3d 599, 601 n.3 (7th Cir. 1993) ("if the system used by [the employer] to compensate [employees] for working overtime complies with the FLSA, it also complies with Illinois law").

[12] *Cf.* 820 ILCS 105/12(a) (parties cannot agree to pay wages that are less than those required by the IMWL).

Portal-to-Portal Act only underscores how unfounded Plaintiffs' position is.

Notably, Plaintiffs do not cite a *single* case holding that the Portal-to-Portal Act does not apply under the IMWL. As *Mitchell* put it: "The absence of any enforcement of the interpretation advocated by the [P]laintiffs in this case is telling evidence of how the Illinois law is understood by Illinois judges, lawyers, and labor officials." 745 F.3d at 845.

### B.     Illinois Is Unlike The States That Did Not Adopt The Portal-To-Portal Act.

Unable to find any toehold for their argument under Illinois law, Plaintiffs turn to a few decisions in which courts in *other* states found that *their* overtime laws do not incorporate the Portal-to-Portal Act. Opp. at 22. But the reasoning of those decisions does not apply to Illinois.

Start with Arizona. It enacted its overtime statute in 1975 "with no reference to federal law." *Roberts v. State*, 512 P.3d 1007, 1015 (Ariz. 2022). Its overtime regulations incorporate by reference just two discrete FLSA regulations, neither of which concern the Portal-to-Portal Act. *Id.* at 1014. By contrast, Illinois enacted its overtime statute in 1976 with the express goal of "mak[ing] us even with federal laws." 79th Ill. Gen. Assemb., H.R., Trans. of June 16, 1976, at 169. And the Illinois regulation discussed above, 56 Ill. Admin. Code § 210.120, refers to *all* of the "Regulations and Interpretations" of the FLSA, including the Portal-to-Portal Act amendment, for guidance in interpreting the IMWL.

Maryland, too, is different than Illinois. It enacted its overtime statute in 1965 with a deliberate reference to the original version of the FLSA as "of 1938," not the FLSA "as amended" later in 1947 by the Portal-to-Portal Act. *Amaya v. DGS Constr., LLC*, 278 A.3d 1216, 1240-41 (Md. 2022). In Pennsylvania, the state courts' practice is to "*not* follow the interpretation" of the FLSA when interpreting the state overtime law. *In re Amazon.com, Inc.*, 255 A.3d 191, 201 (Pa. 2021) (emphasis added). But in Illinois, the state courts' practice is the opposite: to interpret the IMWL "in conformity with the FLSA." *Kerbes v. Raceway Assoc., LLC*, 961 N.E.2d 865, 870-73

(Ill. App. Ct. 2011). California presents the starkest contrast. Whereas its legislative history shows that the state "purposely abandoned" the FLSA and the Portal-to-Portal Act, *Frlekin v. Apple Inc.*, 457 P.3d 526, 532 (Cal. 2020), Illinois's legislative history shows the state has always sought to match the "language," "purpose," and "policy," of federal law in the IMWL. *Lewis v. Giordano's Enters., Inc.*, 921 N.E.2d 740, 746 (Ill. App. Ct. 2009); *see also* MTD at 13-16.

Other states have found their overtime laws *do* incorporate the Portal-to-Portal Act—despite no express statutory incorporation—for reasons that *do* apply to Illinois. The Oregon Supreme Court, for example, found it "significant" that the legislators enacting the Oregon overtime statute did so with the express purpose of providing "similar coverage to what many of them believed they already had under federal law" and "drew in large measure from federal law," despite not adopting "word-for-word every portion of the FLSA." *Buero v. Amazon.com Servs., Inc.*, 521 P.3d 471, 477, 484 (Or. 2022). The same is true in Illinois. *See* MTD at 13-16. In Kentucky, the Sixth Circuit recognized that the state legislators based their overtime statute on the "model" FLSA, and that the Kentucky courts considered the statute to be "Kentucky's analogue to the [FLSA]." *In re Amazon.com, Inc.*, 852 F.3d 601, 610 (6th Cir. 2017). So too in Illinois. *See* MTD at 13-14 (collecting Illinois cases noting how the IMWL is "analogous" to the FLSA). In Ohio, the overtime statute referred to overtime paid "in the manner and methods provided in" the FLSA, "*as amended*" by the Portal-to-Portal Act. *Thomas v. Amazon.com Servs., Inc.*, 462 F. Supp. 3d 828, 834-37 (N.D. Ohio 2020) (emphasis added; quoting O.R.C. § 4111.03(A) (2020)). 56 Ill. Admin. Code § 210.120 likewise refers to the regulations and interpretations of the FLSA, "as amended" by the Portal-to-Portal Act, for guidance in interpreting the IMWL.

In the end, the non-Illinois cases Plaintiffs cite demonstrate only that states vary on whether to apply the Portal-to-Portal Act absent an express statutory incorporation. There can be no

dispute, however, that Illinois has aligned the IMWL with the FLSA and the Portal-to-Portal Act. Thus, Plaintiffs' IMWL claim fails along with their FLSA claim.

## III.    Plaintiffs Do Not Sufficiently Allege An Agreement For Their IWPCA Claim.

To state a valid claim for relief under Count II, the IWPCA claim, Plaintiffs must plead "that they are owed compensation from [Amazon] pursuant to an employment agreement." *Chagoya*, 992 F.3d at 624. Plaintiffs concede their only allegation of an agreement is just this: "Amazon agreed to pay Plaintiffs an hourly rate of pay for the time they worked at Amazon's facility." Opp. at 24; SAC ¶ 31. This conclusory assertion does not satisfy Plaintiffs' burden under *Twombly* and *Iqbal* to plead a plausible, non-conclusory allegation of an agreement.[13]

Plaintiffs do not allege the basic facts a party to an agreement could easily provide: specifically, the where, the when, the how, and the who. Without those details, their allegation is nothing more than a formulaic recitation of what the statute requires. This does not suffice, as the weight of IWPCA caselaw makes clear. *See* MTD at 18 (collecting cases). Plus, Plaintiffs' numerous other allegations demonstrating the parties never acted consistent with the purported agreement underscores the implausibility. *Id.* at 18-19.

Plaintiffs respond with two district court cases that hold an IWPCA claim just requires an allegation of an "agreed hourly rate," and nothing more. Opp. at 25-26 (citing *Cates v. All. Coal, LLC*, 2022 WL 4782857, at *5-6 (S.D. Ill. Oct. 3, 2022) and *Martinez v. Utilimap Corp.*, 2014 WL 6751832, at *3 (S.D. Ill. Nov. 24, 2014)).[14] These cases are outliers and contrary to the majority view that the Seventh Circuit recently cited with approval. *Chagoya*, 992 F.3d at 624-25

---

[13] Thus, it is irrelevant whether Amazon has "notice" of the basis for their claim, whether an "affirmative defense" applies, or whether there was some agreement to "deprive them of wages." Opp. at 24-26.

[14] The other case Plaintiffs cite, *Steger v. Life Time Fitness, Inc.*, 2015 WL 5307708, at *2 (N.D. Ill. Sept. 10, 2015), does not stand for this principle and does not help them. Opp. at 25. Those plaintiffs pointed to a specific agreement, an "Incentive Compensation Plan," as the basis for their IWPCA claim.

(collecting cases holding that plaintiffs must allege a "specific agreement beyond [a] general employment contract" that concerns "the particular work allegedly performed").

## IV.  Plaintiffs' Quantum Meruit Claim Fails Because It Is Derivative.

Plaintiffs contend their quantum meruit claim in Count IV does not depend on their FLSA and IMWL claims for two reasons.  One reason is that it "involves different conduct."  Opp. at 28. That is false.  The alleged conduct for the quantum meruit claim is in SAC ¶ 125, which is a word-for-word copy of the alleged conduct for the FLSA and IMWL claims in SAC ¶ 25.  The conduct underlying each claim is not different just because Plaintiffs seek different kinds of wages as relief for each claim.  Opp. at 28.

The other reason is that Plaintiffs allege a "quantum meruit" claim, but Amazon cited "unjust enrichment" caselaw.  *See* MTD at 20 (citing *Cleary v. Philip Morris*, 656 F.3d 511, 517 (7th Cir. 2011) (dismissing unjust enrichment claims based on "the same improper conduct" as other dismissed claims)).  This distinction is meaningless.  In Illinois, the only practical difference between a quantum meruit claim and an unjust enrichment claim is how damages are measured. *See Marcatante v. City of Chicago*, 657 F.3d 433, 442 (7th Cir. 2011); *Hayes Mech., Inc. v. First Indus., L.P.*, 812 N.E.2d 419, 426 (Ill. App. 2004).[15]  Regardless, Plaintiffs have pled no damages under a quantum meruit theory—"measured by the reasonable value of work provided," Opp. at 28—because they have not demonstrated any compensable work in the first place.

## CONCLUSION

For the above reasons, and those in Amazon's opening brief, the Court should dismiss the SAC with prejudice for failure to state a claim under Rule 12(b)(6).

---

[15] Plaintiffs prove the point by arguing they have pled a *quantum meruit* claim by alleging "that it would be *unjust* for Amazon to retain the benefit of the Plaintiffs' time."  Opp. at 27 (emphasis added).

Dated:  April 28, 2023                    Respectfully submitted,

                                          */s/ Kevin F. Gaffney*

                                          Sari M. Alamuddin (IL Bar No. 6215689)
                                          Kevin F. Gaffney (IL Bar No. 6318103)
                                          Alexandra Belzley (IL Bar No. 6338712)
                                          MORGAN, LEWIS & BOCKIUS LLP
                                          110 North Wacker Drive
                                          Chicago, IL 60606
                                          (312) 324-1000
                                          (312) 324-1001 fax
                                          sari.alamuddin@morganlewis.com
                                          kevin.gaffney@morganlewis.com
                                          alexandra.belzley@morganlewis.com

                                          *Counsel for Defendant Amazon.com Services, LLC*

## **CERTIFICATE OF SERVICE**

I, Kevin F. Gaffney, an attorney, certify that on April 28, 2023, I electronically filed the foregoing with the Clerk of the above Court using the Court's CM/ECF electronic filing system, which will send notification of such filing to the following attorneys of record:

Douglas M. Werman
Maureen A. Salas
WERMAN SALAS P.C.
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
Tel: (312) 419-1008
dwerman@flsalaw.com
msalas@flsalaw.com

Don J. Foty
HODGES & FOTY, LLP
2 Greenway Plaza, Suite 250
Houston, Texas 77046
Tel: (713) 523-0001
dfoty@hftrialfirm.com

*Attorneys for Plaintiffs*

*/s/ Kevin F. Gaffney*
Kevin F. Gaffney