## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LISA JOHNSON and GALE MILLER
ANDERSON, individually and on behalf
of all other similarly situated,

        Plaintiffs,

        v.

AMAZON.COM SERVICES, LLC,

        Defendant.

No. 23 C 685

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Plaintiffs allege that Amazon failed to pay them for time spent being screened for COVID, in violation of: the Fair Labor Standards Act, the Illinois Minimum Wage Law, and the Illinois Wage Payment Collection Act. Amazon has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. That motion is granted.

## Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual

allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

## Background

Plaintiffs worked at an Amazon warehouse in Chicago. Their "job duties included moving boxes, stacking packages, and loading boxes." With the COVID outbreak, Amazon began requiring employees "to undergo a temperature check and to answer questions about [their] health. If the employee passed the examination, he/she was then given a mask to wear." This process took "approximately" 10-15 minutes.

Plaintiffs allege that the "COVID-19 screenings were . . . necessary to the principal work performed by Plaintiffs and the Class Members and were necessary to ensure a safe workplace." They also allege that "Amazon required Plaintiffs and the Class Members to undergo this screening for the purposes of overall safety in the Amazon facilities and to prevent Plaintiffs and the Class Members from inadvertently

and unintentionally infecting the Amazon facilities or Amazon products, and in turn, Amazon's customers."

## Analysis

## I.  Fair Labor Standards Act ("FLSA")

The FLSA's minimum wage and overtime compensation requirements do not apply to "activities which are preliminary to or postliminary to" the "principal activity or activities which [the] employee is employed to perform." 29 U.S.C. § 254(a). "The Supreme Court consistently has interpreted 'principal activity' to include all activities which are 'integral and indispensable' to the principal activity." *Chagoya v. City of Chicago*, 992 F.3d 607, 618 (7th Cir. 2021) (quoting *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 33 (2014)). The Supreme Court has also held that an activity is "integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Busk*, 574 U.S. at 33.

Supreme Court precedent provides examples. For instance, the time meat-packers spend sharpening their knives is "integral and indispensable." *See Busk*, 574 U.S. at 518 (citing *Mitchell v. King Packing Co.,* 350 U.S. 260, 262 (1956)). So is changing clothes and showering for workers dealing with toxic materials. *See Busk*, 574 U.S. at 518 (citing *Steiner v. Mitchell,* 350 U.S. 247, 252-53 (1956)). However, the time spent by meat-processing plant workers *waiting* for the opportunity to dress in protective gear was not compensable because it was "two steps removed from the

productive activity on the assembly line." *See Busk*, 574 U.S. at 518 (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 42 (2005)). Furthermore, the time warehouse workers spent "undergoing post-shift security screenings," i.e., to check whether they were stealing, was not part of their principal activity "to retrieve products from warehouse shelves and package those products for shipment." *See Busk*, 574 U.S. at 518. Neither was a pre-shift search of employees in a "rocket-powder plant" when they were searched "for matches, spark producing devices such as cigarette lighters, and other items which have a direct bearing on the safety of the employees." *See Busk*, 574 U.S. at 519 (citing with approval Department of Labor guidance).

Here, there is no dispute that Plaintiffs' "principal activities" are "moving boxes, stacking packages, and loading boxes." A COVID screening is neither integral nor indispensable to that work. It is not indispensable like sharpening a meat-packers knife or putting on the protective clothing for work with toxic materials. And the screening is not integral to the functioning of the warehouse generally.

COVID screenings are much more like the security screenings for theft or safety. Those screenings are concerned with aspects of society generally, i.e., the temptation to steal and possession of devices which might create sparks. The screenings enabled to the businesses to function more efficiently or safely, but they are not necessary for the business to function on any given day.

Plaintiffs argue that COVID screenings were necessary to protect the workers in the warehouse and prevent the potential infection of customers through packages. Perhaps these are legitimate reasons for Amazon to impose the screenings on its

employees. But this kind of protection for workers and customers is not necessary for the workers to do their jobs in the warehouse. Because the screenings are not necessary for the warehouse to function, the screenings are not integral or indispensable, and the FLSA does not require compensation for the time spent on COVID screenings.

Plaintiffs cite one district court case which held that the FSLA required compensation for COVID screenings at an Amazon warehouse. *See Boone v. Amazon.com Servs., LLC*, 562 F. Supp. 3d 1103 (E.D. Cal. Mar. 11, 2022). In *Boone*, the court found that the plaintiffs had plausibly alleged that "the screenings prevent the COVID-19 virus from spreading throughout defendant's fulfillment centers and infecting employees and products," and that "foregoing [the screenings] would substantially impair the workplace safety at the fulfillment centers." *Id.* at 1120-21. Even assuming the plaintiffs in *Boone* and the Plaintiffs here have plausibly alleged that COVID is a material risk to the operations of an Amazon warehouse, it is not a risk that is integral to warehouse work. COVID and other health issues are a risk of life in general that must be accounted for in all human activities. There is nothing special about COVID that makes it of particular concern for an Amazon warehouse because of the work performed there, as opposed to any other workplace where many people come into contact with each other.[1]

---

[1] Additionally, it appears that the court in *Boone* allowed outdated case law to influence its application of the *Busk* standard. This is an additional reason *Boone* does not persuade this Court.

Therefore, the FLSA does not require compensation for the COVID screening time Plaintiffs allege and their FLSA claim must be dismissed.

## II.    Illinois Minimum Wage Law ("IMWL")

"Illinois courts frequently say that they look to the Fair Labor Standards Act for guidance in interpreting the state's minimum wage law." *Mitchell v. JCG Indust., Inc.*, 745 F.3d 837, 845 (7th Cir. 2014). The Seventh Circuit has applied *Busk's* "integral and indispensable" standard to claims under the IMWL. *See Chagoya*, 992 F.3d at 615 n.21 ("Because the IMWL parallels the language of the FLSA, the parties agree that the same standard applies to the operators' claims under the FLSA and the IMWL. Accordingly, we analyze the FLSA and IMWL claims together."). Courts in this District that dismiss FLSA claims under the "integral and indispensable" standard also dismiss IMWL claims. *See Bartlett v. City of Chicago*, 2019 WL 4823532, at *4 (N.D. Ill. Oct. 1, 2019) (analyzing "FLSA and IMWL claims together" because both statutes use the federal definition of work, as modified by the Portal-to-Portal rule, to determine whether pre- or post-shift activities require wages); *Meadows v. NCR Corp.*, 2017 WL 5192009, at *4-8 (N.D. Ill. Nov. 9, 2017) (same); *Pizano v. Big Top & Party Rentals, LLC*, 2017 WL 1344526, at *1-3 & n.1 (N.D. Ill. Apr. 12, 2017) (same); *Guzman v. Laredo Sys., Inc.*, 2012 WL 5197792, at *5 (N.D. Ill. Oct. 19, 2012) (same); *Rix v. UPS*, 2007 WL 9813347, at *4 (N.D. Ill. Apr. 24, 2007) (same); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2004 WL 1882449, at *3-4 (N.D. Ill. Aug. 18, 2004) (same); *O'Brien v. Encotech Constr.*, 2004 WL 609798, at *4-7 (N.D. Ill. Mar. 23, 2004) (same).

Plaintiffs' only argument to the contrary is based on a dissenting opinion to the Seventh Circuit's decision in *Mitchell* applying federal FLSA standard to Illinois Minimum Wage Law claims. This Court follows the majority and dismisses Plaintiffs' Illinois Minimum Wage Law claim.

## III. Illinois Wage Payment Collection Act ("IWPCA")

The IWPCA allows for a cause of action to recover "any compensation owed an employee by an employer pursuant to an employment contract or agreement." 820 ILCS 115/2. Plaintiffs allege and argue that "Amazon agreed to pay Plaintiffs an hourly rate of pay for the time they worked at Amazon's facility." R. 25 at 24. But as just discussed, Amazon disputes whether the time spent on COVID screening is "work." Plaintiffs do not allege that Amazon ever agreed that the COVID screening would constitute compensable work. Without a plausible allegation of such an agreement, Plaintiffs' IWPCA claim fails.

## IV. Quantum Meruit

To state a claim for quantum meruit, Plaintiffs must allege that that they spent time on the COVID screening for Amazon's benefit and that Amazon unjustly retained this benefit. *See Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 931 N.E.2d 810, 825-26 (Ill. App. Ct. 1st Dist. 2010). As discussed, the COVID screening conferred a benefit not just on Amazon, but on Plaintiffs, their co-workers, and society as a whole, because it—according to Plaintiffs' own allegations—helped mitigate a global pandemic. Further, Plaintiffs' allegation of unjust or improper conduct "rests on the same improper conduct" alleged to violate the federal and state statutes.

Because the benefit was not Amazon's alone, and because the alleged unjust conduct is premised on statutes which the Court has held do not prohibit the conduct, Plaintiffs' quantum meruit claims must fall with those claims. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).

## Conclusion

Therefore, Amazon's motion to dismiss [21] is granted. Plaintiffs' claims are dismissed without prejudice to filing an amended complaint by 1/11/2024. If Plaintiffs fail to file an amended complaint by 1/11/2024, the dismissal with be with prejudice. If Plaintiffs decided not to file an amended complaint, they should inform the Court by email to the Courtroom Deputy as soon as possible so judgment can be entered and the case closed.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated:  December 7, 2023